# Ronald Longe v. Boise Cascade Corporation, Specialty Paperboard, Inc., and Rock-Tenn Company, Mill Division, Inc.

[762 A.2d 1248]

No. 98-384

Present: Dooley, Morse, Johnson and Skoglund, JJ., and Teachout, Supr. J., Specially Assigned

Opinion Filed September 22, 2000

*Peter J.R. Martin* and *Donald R. Pellman* of *Peter J.R. Martin & Associates, P.C.*, St. Albans, for Plaintiff-Appellee.

*Robert G. Cain* and *Kevin L. Kite* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellant.

**Skoglund, J.** Boise Cascade Corporation (Boise) appeals from a decision of the Commissioner of the Department of Labor and Industry (Department) that held Boise liable for permanent partial disability (PPD) benefits to claimant Ronald Longe based on an injury he sustained in 1983. The Commissioner concluded that Boise breached its duty to investigate whether claimant had suffered permanent impairment as a result of his 1983 injury, and to inform claimant of his right to PPD benefits. Therefore, the Commissioner held that Boise was barred from raising the statute of limitations as a defense to payment of PPD benefits. On appeal, Boise argues: (1) it had no duty to investigate claimant's permanency status or to inform claimant of his right to PPD benefits; (2) claimant's claim is barred by the statute of limitation; (3) claimant's claim is barred by laches; (4) the Commissioner erred in assigning claimant a seventeen-percent impairment rating for purposes of calculating his PPD benefits; (5) the Commissioner erred in awarding claimant interest from the date he reached medical end result until the date Boise paid him PPD benefits; and (6) the Commissioner erred in requiring Boise to pay claimant's attorney's fees and costs. Because we agree with Boise's first and second arguments, we reverse.

## I.

The relevant facts are not in dispute. Claimant worked at the Missisquoi paper mill. Boise owned the mill from approximately 1983 until June 30, 1989. Specialty Paperboard, Inc. (Specialty) owned the mill from June 30, 1989 until March 15, 1991. Since March 15, 1991, Rock-Tenn Company (Rock-Tenn) has owned the mill. At all times relevant to this case, claimant was an employee, and Boise, Specialty and Rock-Tenn were employers, within the meaning of Vermont's Workers' Compensation Act (the Act), 21 V.S.A. §§ 601-711.

On May 27, 1983, while performing in the course and scope of his employment at Boise, claimant fell through a floor and injured his back. He was diagnosed with a herniated disc in the right L4-L5 region of his back, and underwent surgery in December 1984. He subsequently filed a workers' compensation claim and, on December 31, 1985, claimant and Boise entered into an agreement, which the Department approved. See 21 V.S.A. § 662(a). Under the agreement, Boise paid claimant temporary total disability (TTD) benefits from

November 23, 1984 until claimant returned to work in May 1985, as well as medical expenses related to the 1983 injury. Claimant did not request or apply for PPD benefits, and Boise did not provide them. Nor did Boise investigate whether claimant had suffered any permanent impairment as a result of his injury, or inform claimant that, if he did suffer permanent impairment, he had a right to PPD benefits. Claimant reached medical end result in December 1985.

In May 1991, claimant reinjured his back while working for Rock-Tenn. In August 1991, he underwent back surgery identical to the 1984 surgery. He returned to work in December 1991.

Claimant subsequently filed a claim against Boise, seeking workers' compensation benefits for the 1991 injury. Boise denied the claim in March 1992. According to Boise, in 1991, claimant suffered an aggravation, and not a recurrence, of the 1983 injury, and therefore, the employer at the time of the 1991 injury, Rock-Tenn, was responsible for paying disability benefits. See *Pacher v. Fairdale Farms*, 166 Vt. 626, 627-28, 699 A.2d 43, 46 (1997) (mem.) (if injury is recurrence, employer at time of original injury is liable; if injury is aggravation, employer at time of new injury is liable); 21 V.S.A. § 662(c) (employer at time of most recent injury presumed to be liable).

In August 1993, claimant filed a notice of hearing with the Department, seeking TTD, PPD, and medical benefits from Boise for the 1991 injury, as well as attorney's fees. On the notice, claimant stated that the claim was based on the 1983 injury, and specified that he was seeking TTD benefits from August 1, 1991 to December 29, 1991, PPD benefits for an as-yet-undetermined number of weeks, medical benefits related to the 1991 injury, and attorney's fees. In December 1993, claimant filed an amended notice, naming Boise, Specialty and Rock-Tenn as defendants, and framing the issue as the extent to which each of the defendants was liable to pay him benefits.

The Department held hearings on December 8-10, 1997, and the Commissioner issued a written decision in July 1998. In his decision, the Commissioner framed the issues as: (1) whether claimant's 1991 injury was work-related; (2) whether, in 1991, claimant suffered a recurrence or an aggravation of the 1983 injury; and (3) whether Boise was liable to pay claimant PPD benefits for his 1983 injury.[1]

---

[1] It is not clear from the record when or how the third issue arose. In response to a question posed at oral argument before this Court, claimant's attorney was not able to recall when or how it arose. Based on the transcript of the hearings, it appears that the hearing officer may have raised the issue herself, off the record, at the December 9 hearing. At the December 10 hearing, Boise's attorney stated to the hearing officer:

The Commissioner determined that claimant's 1991 injury was work-related and that it was an aggravation of his 1983 injury. Therefore, the Commissioner held Rock-Tenn liable for TTD and PPD benefits, as well as medical expenses, for claimant's 1991 injury. He further held that Boise was liable to claimant for PPD benefits for the 1983 injury. Before the hearing officer, Boise had argued that it could not be held liable for PPD benefits for claimant's 1983 injury because the statute of limitations had expired. However, the Commissioner rejected this argument because, according to him, Boise had a duty to investigate whether claimant had suffered permanent impairment as a result of his 1983 injury and, if he had, to inform claimant of his right to PPD benefits. Therefore, because Boise had not done so, the Commissioner ruled that Boise could not assert the statute of limitations as a defense.

Next, the Commissioner calculated claimant's PPD benefits. Dr. Dorothy Ford had evaluated claimant in June 1993, and, applying the third edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (Guides), which was in effect at the time of her evaluation, assigned a seventeen-percent permanent partial impairment rating to claimant's spine. However, applying the second edition of the Guides, which was in effect in 1983, at the time of claimant's injury, Dr. Andres Roomet assigned an eight-percent permanent partial impairment rating to claimant's spine. The Commissioner adopted Dr. Ford's approach and calculated claimant's PPD benefits based on a seventeen-percent permanent partial impairment rating of his spine.

Further, the Commissioner ordered Boise to pay claimant twelve-percent interest from December 28, 1985 — the date claimant reached medical end result — to the date of payment. Finally, the Commissioner ordered Rock-Tenn and Boise to pay claimant's attorney's fees and costs in proportion to their liability.

Pursuant to 21 V.S.A. § 672, the Commissioner certified the following questions for our review: (1) whether Boise must pay claimant PPD benefits for his 1983 injury; (2) whether, in calculating claimant's PPD benefits, the Commissioner erred in accepting Dr. Ford's impairment rating because she used the edition of the Guides that was in effect in 1993, rather than the edition that was in effect at

"The second issue is the permanency issue, and I completely understand your brief comment yesterday. As I understand it, no permanency benefits were paid back in '85." However, an examination of the transcript of the December 9 hearing revealed no related "brief comment."

the time of claimant's 1983 injury; and (3) whether the Commissioner erred in awarding claimant interest from the date he reached medical end result on his 1983 work-related injury until the date of payment. Because we answer the first certified question in the negative, we do not reach the second and third certified questions.

## II.

On appeal, we will affirm the Commissioner's decision if his "conclusions are rationally derived from the findings and based on a correct interpretation of the law." *Pacher*, 166 Vt. at 627, 699 A.2d at 46. The parties do not challenge the Commissioner's findings; therefore, we review only his conclusions.

In order to answer the first certified question, we must first determine whether the statute of limitations on claimant's claim for PPD benefits had expired. If it had, we must then determine whether the Commissioner erred in concluding that Boise could not assert the statute of limitations as a defense.

## A.

There are two statutes of limitation that govern workers' compensation proceedings. First, under 21 V.S.A. § 656, a claimant (1) must file a notice of injury with the employer "as soon as practicable" after he or she sustains an injury, and (2) must file a claim "within six months after the date of the injury." 21 V.S.A. § 656 (amended by 1993, No. 225 (Adj. Sess.), §§ 9, 32). However, 21 V.S.A. § 660 excuses the failure to timely give notice or make a claim "if it is shown that the employer, his agent or representative, had knowledge of the accident or that the employer has not been prejudiced by such delay or want of notice." 21 V.S.A. § 660 (amended by 1993, No. 225 (Adj. Sess.), §§ 10, 32). Second, a claimant must file a notice of hearing with the Department "within six years from the date of injury." *Fitch v. Parks & Woolson Mach. Co.*, 109 Vt. 92, 98, 191 A. 920, 923 (1937).

In *Hartman v. Ouellette Plumbing & Heating Corp.*, 146 Vt. 443, 507 A.2d 952 (1985), the claimant had suffered a work-related injury to his left knee in 1976, but did not miss a significant amount of work and received no disability benefits, although he suffered some problems with his knee. In 1982, the claimant broke his right ankle in a nonwork-related accident, and, with his right leg in a cast, began to suffer increased problems with his left knee. Based upon "the newly discovered injury to his left knee," he filed a claim, which his

employer denied. In 1983, he filed a notice and application for hearing before the Department. See *id.* at 445, 507 A.2d at 953. The Commissioner dismissed his claim, holding that the six-year statute of limitations had expired. The claimant appealed to this Court.

We first addressed 21 V.S.A. § 656, the six-month statute of limitations for filing a notice and claim, and, citing § 660, concluded that, because the employer had knowledge of the accident, the claimant's delay in filing a notice and claim was not an "automatic bar to worker's compensation in this proceeding." *Id.* at 446, 507 A.2d at 953. Next, we stated that it would be unfair to rigidly apply the six-month and six-year statutes of limitation, particularly where "'the injury itself does not exist in compensable degree during the claims period.'" *Id.* at 446, 507 A.2d at 954 (quoting 3 A. Larson, The Law of Workmen's Compensation § 78.42(a) (1985)). Therefore, we held that, for purposes of the notice and claim provisions of § 656, and for purposes of the six-year statute of limitations, the date of injury "is the point in time when an injury becomes reasonably discoverable and apparent." *Id.* at 447, 507 A.2d at 954. After the injury becomes reasonably discoverable and apparent, a claimant is allowed six months to file a claim with his or her employer. And, "[i]f such claim is denied or contested, the claimant may then bring an action within six years from the date the injury was reasonably discoverable and apparent." *Id.* Consequently, we vacated and remanded the claimant's case.

Boise argues that claimant's injury became reasonably discoverable and apparent no later than December 1985, when claimant reached medical end result with regard to his 1983 injury. Claimant does not contend otherwise;[2] rather, he argues that we should not apply the reasonably-discoverable-and-apparent standard articulated in *Hartman* because that case is factually distinguishable from the instant case. According to claimant, in *Hartman*, before the claimant filed his 1983 claim, the employer could not have been aware of the claimant's need for further workers' compensation benefits, and thus, the claimant in *Hartman* was better informed about his disability status than was his employer. Here, claimant contends that, because

---

[2] Nor does claimant argue that the permanent nature of his injury was latent and therefore was not reasonably discoverable and apparent until a later date. See *E-Z Mart Stores, Inc. v. Jones*, No. CA 90-437, 1991 WL 104060, at *2 (Ark. Ct. App., June 10, 1991) ("where the full extent and nature of the injury are not known, nor reasonably ought to be known until a later date, the running of the statute of limitations may be postponed under the latent injury rule").

Boise could have, and should have, known that claimant suffered a permanent partial disability due to the nature of his injury, Boise was better informed than claimant about claimant's disability status. According to claimant, the reasonably-discoverable-and-apparent standard applies only when the claimant is better informed about his disability status than the employer. We disagree. There is nothing in *Hartman* to indicate such a limitation, and we decline to read one into that holding.

 Claimant does not dispute Boise's contention that the six-year statute of limitations began to run in December 1985. Nor does he dispute the claim that he did not initiate a proceeding for PPD benefits until August 1993, when he filed a notice of hearing before the Workers' Compensation Board seeking benefits from Boise for the 1991 injury. Rather, claimant argues that the original notice of injury he filed with Boise was sufficient to inform Boise of his claim for PPD benefits, and thus his claim is not time-barred. This argument obviously invokes the six-month statute of limitations for filing a notice and claim with the employer. But, even if we were to accept claimant's argument that he was not required to file a second notice or claim with Boise for PPD, nearly eight years had elapsed between December 1985 and August 1993. The six-year statute of limitations for commencing a proceeding before the Department expired in December 1991. See *Hartman*, 146 Vt. at 447, 507 A.2d at 954. Thus, claimant's claim is time-barred.

## B.

The Commissioner held that Boise could not raise the statute of limitations defense because he concluded that Boise had, and breached, a duty to investigate whether claimant suffered any permanent impairment as a result of his 1983 injury, and, if so, to inform claimant of his right to PPD benefits. We disagree.

 Whether a duty exists in a particular case is a question of law. See *McGee v. Vermont Fed. Bank*, 169 Vt. 529, 530, 726 A.2d 42, 44 (1999). By statute, some states impose a duty on employers to notify employees of their rights under the applicable workers' compensation act. See *Kaiser Found. Hosps. v. Workers' Comp. Appeals Bd.*, 702 P.2d 197, 201-02 (Cal. 1985) (employer has statutory duty to notify employee of his or her rights under workers' compensation act); *Gaines v. Orange County Pub. Utils.*, 710 So. 2d 139, 140 (Fla. Dist. Ct. App. 1998) (same).

Under 21 V.S.A. § 691, which was in effect during 1983-85, an employer who carries workers' compensation insurance is required to "post and maintain, in a conspicuous place . . . typewritten or printed notices in form prescribed by the commissioner" stating that the employer carries workers' compensation insurance. This is the only duty to inform explicitly imposed by the Act, and claimant does not argue that Boise failed to post the required notices. Thus, we must determine whether the Legislature intended to impose a duty upon employers to inform beyond that set forth in § 691.

In construing the intent of the Legislature, we "consider the whole and every part of the act, the subject matter and its effect and consequences so as to ascertain the true meaning and intent of the legislature." *Quinn v. Pate*, 124 Vt. 121, 124, 197 A.2d 795, 797 (1964). "[O]ur construction must . . . be guided by the consideration that the 'purpose of the workmen's compensation law is to provide not only for the employees a remedy which is both expeditious and independent of proof of fault, but also for employers, *a liability which is limited and determinative.*'" *Id.* at 124, 197 A.2d at 797 (emphasis added).

Claimant cites 21 V.S.A. §§ 642, 646, and 648 as indicative of a legislative intent to impose a duty on employers to investigate potential permanent partial disability and to inform a claimant of the availability of PPD benefits. We, however, fail to see how any of those provisions supports claimant. Section 642 sets forth an employer's responsibilities when a claimant has suffered TTD. Yet, in this case, claimant received TTD benefits for his 1983 injury, and TTD benefits are not now at issue. Section 646 provides for temporary partial disability benefits, which are not at issue either.

Prior to its amendment in 1995, § 648 provided for PPD benefits and stated, in relevant part: "In case of the following injuries, the compensation shall be paid during total disability . . . and at the termination of the total disability occasioned by such injuries, the employer shall pay" PPD benefits in percentages specified by the statute.[3] 21 V.S.A. § 648 (amended by 1993, No. 225 (Adj. Sess.), § 7). The statute listed several specific injuries, such as the loss of a limb,

---

[3] Section 648 was amended effective 1995 and now specifically provides that the most recent edition of the *Guides* shall be used to determine the existence and degree of permanent partial impairment, eliminating the listing of scheduled injuries in the statute. 21 V.S.A. § 648(b). Further, the amendment specifically adds mention of spinal injuries and provides that spinal impairment shall be determined in accordance with the Department's rules. See § 648(c). We rely on the prior version of § 648, as do the parties.

known as scheduled injuries, for which the Legislature has conclusively determined the required compensation.[4] Section 648(20) applied to unscheduled injuries and provided: "In [the] event an employee shall receive an injury which results in the permanent impairment of any physical function not herein specifically mentioned, *the commissioner shall determine the percentage of loss* and award compensation accordingly." 21 V.S.A. § 648(20) (emphasis added) (amended by 1993, No. 225 (Adj. Sess.), § 7).

Claimant argues that the language "shall pay" in § 648 indicates a legislative intent that an employer is automatically required to pay PPD benefits when total disability benefits are terminated. Apparently, claimant believes that, having requested and received TTD, he need not take any further action to secure his or her rights to PPD. Therefore, claimant argues, under the directive language of § 648, the Legislature must have intended for the employer to investigate a claimant's permanency status and inform the claimant of his or her right to receive PPD benefits.

This argument ignores the fact that some injuries resulting in temporary total disability to work do not necessarily result in permanent partial disability. It further misconstrues the role of § 648, which, as noted above, is to provide an expedient, efficient remedy for injured workers by specifying scheduled injuries: "Because resolution of these issues on a case by case basis would impede the process, thereby delaying awards to needy beneficiaries, the legislature has chosen a 'scheduled benefits' system. The rate of compensation for listed injuries has been conclusively determined in the Act." *Bishop v. Town of Barre*, 140 Vt. 564, 572, 442 A.2d 50, 53 (1982).

Section 648 provides a substantive measure of a claimant's right to compensation for scheduled injuries. When the injury sustained is not a scheduled injury, the commissioner may determine the percent of loss. The section does not establish procedures or processes for initiating or conducting a proceeding for PPD benefits. It places no duty on employers to investigate the possible existence of a permanent partial disability nor to initiate a proceeding for PPD benefits.

---

[4] As it existed in 1983-85, § 648 required the employer to pay to the injured employee sixty-six and two-thirds percent of the employee's average weekly wages — computed in accordance with other sections of the law — for periods specified for each scheduled injury. For example, the loss by separation of one leg at or above the knee joint requires two hundred and fifteen weeks of PPD benefits.

We find no expression of legislative intent to impose a duty upon employers to notify claimants of their rights under any aspect of the Act. To the contrary, as evidenced by § 691, the Legislature knows how to impose a duty upon employers when it wishes to do so. Furthermore, as evidenced by 21 V.S.A. § 660, the Legislature knows how to create an equitable tolling provision when it wishes to do so. However, the Legislature did not impose a duty upon employers beyond that set forth in § 691. Nor did the Legislature provide a tolling provision applicable to the six-year statute of limitations for proceedings under the Act. See *Parker v. Gorczyk*, 170 Vt. 263, 268, 744 A.2d 410, 413 (1999) ("Legislature knows how to impose" limitations on discretion of Commissioner of Department of Corrections, "but chose not to do so with respect to the furlough statute"). As we stated in *Archer v. Department of Employment Security*, 133 Vt. 279, 336 A.2d 172 (1975), "'[t]his Court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used.'" *Id.* at 281, 336 A.2d at 174 (quoting *Nurmi v. Employment Sec. Bd.*, 124 Vt. 42, 46, 197 A.2d 483, 486 (1963) (overruled on other grounds)). See also *Pate*, 124 Vt. at 124, 197 A.2d at 797-98 ("The burden placed upon the employer of compensating injured employees is only to the extent provided for in the act.").[5]

The majority of courts that have addressed the issue have held that, absent a statutory duty, or circumstances sufficient to invoke the doctrines of equitable estoppel or equitable tolling, an employer has no duty to inform an employee of his or her rights under the workers' compensation laws. See *Tegeler v. Industrial Comm'n*, 672 N.E.2d 1126, 1129 (Ill. 1996) (employer has no duty to inform claimant about statute of limitations); *Olson v. Horton*, 258 N.W.2d 610, 614 (Minn. 1977); *Schmidt v. Proctor & Gamble*, 741 P.2d 382, 384-85 (Mont. 1987) (employer has no affirmative duty to inform claimant of right to file

---

[5] The Commissioner relied upon Rule 11(d), which provides "[i]t shall be the employer's responsibility to pay for at least one permanency examination and impairment rating from the claimant's treating physician, notwithstanding its decision to obtain a rating from an independent medical examiner as well if it so desires." Vermont Dep't of Labor and Industry, Processes and Procedures for Claims Under the Vermont Workers' Compensation and Occupational Disease Acts, 2 Code of Vermont Rules, Rule 11(d) (1993). Rule 11(d) was enacted in 1993 and thus does not govern this case. The Commissioner found support in the rule because, according to him, Rule 11(d) is "merely a formalization of a well observed and regarded Departmental requirement." However, the Commissioner did not provide any support for his statement, and we decline to find a duty based upon his unsupported assertion.

claim); *Tooley v. Alm*, 515 N.W.2d 137, 141 (N.D. 1994) (Workers' Compensation Bureau has no duty to inform claimant of availability of benefits); *Miller v. Keystone Ins. Co.*, 636 A.2d 1109, 1113 (Pa. 1994) (absent evidence of fraud, intentional deception, or making of misleading statements, employer had no affirmative duty to apprise compensation claimant of any or all available benefits); *Pate v. General Elec. Co.*, 260 P.2d 901, 903 (Wash. 1953).

The circumstances of this case do not invoke the doctrines of equitable estoppel or equitable tolling. It is unclear whether the Commissioner based his decision on principles of equitable estoppel, equitable tolling, or some newly fashioned rule of law. We note, however, that, in this case, the Commissioner's findings and conclusions were insufficient to support the application of either equitable estoppel or equitable tolling. See *Beecher v. Stratton Corp.*, 170 Vt. 137, 140, 142-43, 743 A.2d 1093, 1096, 1098 (1999).

Specifically, with regard to equitable estoppel, claimant would bear the burden of proving, among other things, either that Boise, in not investigating claimant's permanency status or informing claimant of his right to PPD benefits, intended that claimant not file a claim, or that Boise's inaction was such that claimant had a "right to believe" that Boise intended that claimant not file a claim. *Id.* at 140, 743 A.2d at 1096 (quoting *Fisher v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 412 (1982)). Here, the Commissioner made no findings regarding Boise's intent in 1985 when TTD ended, and reached no conclusions regarding claimant's right to believe that Boise intended that he not file a claim for PPD benefits. See *Tegeler*, 672 N.E.2d at 1129 ("Estoppel applies when the conduct or statements of an employer or its representatives lull the employee into a false sense of security, thereby causing the employee to delay the assertion of his or her rights."); *Freese v. Carl's Service*, 375 N.W.2d 484, 487 (Minn. 1985) ("There is no evidence that the employer, at any time, made misleading or untrue representations to employee concerning the claim-the type of conduct which would estop an employer from asserting the 3-year statute of limitations."); *Schmidt*, 741 P.2d at 384 ("Questions of estoppel can arise in various ways through actions of the employer. The employee can be lulled into inaction. The employer can take positive action which either prevents a claimant from filing a timely claim or leads him reasonably to believe he does not need to file a claim.") (citations omitted).

With regard to equitable tolling, courts have generally limited the doctrine, applying it only when either "(1) the defendant actively

misled the plaintiff or prevented the plaintiff in some extraordinary way from filing a timely lawsuit; or (2) the plaintiff timely raised the precise claim in the wrong forum." *Beecher*, 170 Vt. at 143, 743 A.2d at 1098. Again, the Commissioner made no findings that Boise actively misled claimant or prevented claimant in some extraordinary way from filing a timely lawsuit. Further, it is clear that claimant did not timely raise the precise claim in the wrong forum. See *Freese*, 375 N.W.2d at 487-88 (state statutes provide that employer must file report of injury and that statute of limitations begins to run when employer files report; however, because statutes do not provide for tolling if employer does not file report, and because there was no evidence that employer engaged in conduct sufficient to warrant estoppel, statute of limitations applied to bar employee's workers' compensation claim).

■ Finally, claimant relies on the Department's 1983 Rule 12(b) to support his assertion that Boise had a duty in 1983 to determine if he suffered a permanent partial disability. The rule mandates that, when a claimant files a notice of injury and claim, the employer must investigate the accident to determine whether or not compensation is due, and, if it is due, to enter into an agreement with the claimant. See Vermont Dep't of Labor and Industry, Workers' Compensation Laws and Regulations, Rule 12(b) (1983). Boise fulfilled its responsibility under Rule 12(b) when it reviewed claimant's request for TTD, obviously concluded that it was a work-related, compensable accident, and entered into a compensation agreement with claimant in 1985. The rule requires no more.

Obviously, parties may enter into an agreement in regard to compensation payable under the Act, including agreement on any PPD to be provided for an unscheduled injury. See 21 V.S.A. § 662(a). In the absence of an agreement, however, the employee must apply for a hearing before the Commissioner. See § 662(b).

■ The burden is generally on the party seeking relief to take some affirmative action in order to protect his or her rights. See *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 532, 687 A.2d 465, 467 (1996) (claimant "filed a claim with the Commissioner to recover additional temporary disability compensation"); *Stamper v. University Apartments, Inc.*, 147 Vt. 552, 554, 522 A.2d 227, 228 (1986) ("Claimant collected temporary total disability benefits based on a stipulation between the parties, but applied to the Commissioner for permanent partial disability and vocational rehabilitation benefits

when the parties could not agree on the degree of permanent partial disability."); *Merrill v. Town of Ludlow*, 147 Vt. 186, 187, 514 A.2d 1050, 1051 (1986) (employer discontinued TTD payments, and claimant "filed a notice for hearing with the Department of Labor and Industry, contending that he was entitled to additional temporary total disability"); *Bishop*, 140 Vt. at 569, 442 A.2d at 52 (when employer discontinued temporary benefits, claimant filed for permanent benefits). If the party seeking relief fails to preserve his right to relief, thereby letting the statute of limitations expire, then, absent a legal disability or circumstances sufficient to invoke the doctrines of equitable estoppel or equitable tolling, he has no right to relief. See *Beecher*, 170 Vt. at 140, 743 A.2d at 1096 (attorney acted unreasonably in allowing statute of limitations to expire without confirming that defendant was willing to waive or extend statute while parties continued settlement negotiations); *Fitch*, 109 Vt. at 98, 191 A. at 923; *Minnesota Mining & Mfg. v. Baker*, 989 S.W.2d 151, 157 (Ark. 1999) ("The burden of filing a claim within the statute of limitation is on the claimant.").

■ We agree with the majority of jurisdictions that have addressed the issue and conclude that, absent a statutory duty or circumstances sufficient to invoke the doctrines of equitable estoppel or equitable tolling, an employer has no duty to inform an employee of his or her rights under the Act. This ruling is in accordance with "'the time-honored principle that all persons are presumed to know the law.'" *Tooley*, 515 N.W.2d at 141 (quoting *State v. Carpenter*, 301 N.W.2d 106, 110 (N.D. 1980)). See also *Texas Employers' Ins. Ass'n v. Herron*, 569 S.W.2d 549, 554 (Tex. Ct. App. 1978) ("A claimant is presumed to know the law."); *Pate*, 260 P.2d at 905 ("While a layman might not know the implications of an injury as it relates to his future welfare, he has the obligation resting upon him in law to know the provisions of the act as it relates to him, and he has [six years] from the date the injury occurred in which to assert his rights."); *State v. Woods*, 107 Vt. 354, 356-57, 179 A. 1, 2 (1935) ("The maxim, 'Ignorantia legis non excusat,' and the corresponding presumption that everyone is conclusively presumed to know the law, are of unquestioned application in Vermont as elsewhere, both in civil and in criminal cases.").

■ Accordingly, Boise is under no obligation to pay claimant PPD benefits for his 1983 injury. Consequently, appellee's motion for attorney's fees is denied. Because of our disposition of this matter, we

do not reach either the Commissioner's second and third certified questions or Boise's remaining arguments.

*First certified question answered in the negative. Case reversed and remanded.*