2010 UT 13

NATIONAL PARKS CONSERVATION ASSOCIATION and William Wolverton, Petitioners,

v.

The BOARD OF TRUSTEES OF the SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION, State of Utah, and Garfield County, Respondents.

No. 20070835.

Supreme Court of Utah.

March 2, 2010.

Rehearing Denied April 22, 2010.

**1194**

Wayne G. Petty, William J. Lockhart, Salt Lake City, for petitioners.

Thomas A. Mitchell, John W. Andrews, Salt Lake City, for respondents the Board of Trustees of the School and Institutional Trust Lands Administration and State of Utah.

Barry L. Huntington, Panguitch, for respondent, Garfield County.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case concerns an exchange of land held by the School and Institutional Trust Lands Administration ("SITLA") for land owned by Garfield County. The SITLA Director formally approved the exchange, and his decision was challenged by the National Parks Conservation Association and William Wolverton (collectively, "NPCA") before the SITLA Board of Trustees (the "SITLA Board" or the "Board"). The SITLA Board ruled against NPCA and upheld the Director's decision. NPCA appeals the Board's ruling. Because we conclude that the exchange was consistent with SITLA's obligations as trustee over school trust lands, we affirm the Board's decision.

## BACKGROUND

¶ 2 This case has its genesis in a land exchange, first proposed in 1987, between the State of Utah, then acting through SITLA's predecessor, the Division of State Lands and Forestry (the "Division"), and Garfield County. The land at issue is section 16 of Township 34 South, Range 8 East, which is found within the boundaries of Capitol Reef National Park.[1] Section 16 was granted to the state by Congress in the Utah Enabling Act, on the condition that the state manage the land for the benefit of the public school system.[2] This grant imposes trust obligations on the state,[3] which the state has accepted and acknowledged in both the Utah Constitution[4] and by statute.[5] This appeal requires us to assess whether SITLA's decision to approve the exchange of section 16 is consistent with these obligations.

I. ORIGINS OF THE PROPOSED EXCHANGE AND THIS COURT'S PRIOR DECISION IN *NATIONAL PARKS CONSERVATION ASSOCIATION v. BOARD OF STATE LANDS*

¶ 3 In 1987, Garfield County approached the Division with a proposal to acquire section 16 in exchange for three parcels of land

---

1. *Nat'l Parks & Conservation Ass'n v. Bd. of State Lands*, 869 P.2d 909, 911 (Utah 1993) [hereinafter *NPCA I*].

2. Utah Enabling Act, ch. 138, § 6, 28 Stat. 107, 109 (1894).

3. *NPCA I*, 869 P.2d at 918.

4. Utah Const. art. XX, § 2.

5. Utah Code Ann. § 53C–1–102 (2009).

owned by the County. Garfield County wanted to acquire section 16 so that it could pave a portion of the Burr Trail, which crossed the property. As part of its proposals, Garfield County submitted appraisals of both section 16 and each of the parcels that it offered in exchange. The Division relied on those appraisals in concluding that the exchange was fair and permissible under its trust obligations. On December 24, 1987, Governor Norman H. Bangerter executed a patent conveying section 16 to Garfield County.[6]

¶4 NPCA, which had attempted unsuccessfully to intervene in the exchange proceedings, sought review by this court of the Division's decision. NPCA challenged the Division's ruling on a number of grounds, two of which are relevant for purposes of this appeal. First, NPCA contended that the Division had violated its fiduciary duties as trustee of the school trust lands by failing to give priority to scenic, aesthetic, and recreational values in its decision to exchange section 16. Second, NPCA argued that the Division breached its fiduciary duties by relying solely on appraisals commissioned by Garfield County to determine that the land exchange was fair to the school land trust.[7]

¶5 In *NPCA I*, we affirmed the Division's decision to base its assessment of the fairness of the exchange primarily on economic, rather than noneconomic, factors.[8] But we also determined that the Division had breached its fiduciary duties by failing to commission an independent appraisal of the land values to determine whether the exchange was fair to the school land trust. We stated,

> For a trustee to rely on appraisals submitted by a purchaser of trust assets is to leave the trust subject to sharp dealing on the part of the purchaser. For that rea-

son, we hold that a breach of trust occurs when a trustee uses an appraisal submitted by the purchaser as the basis for ascertaining the fair market value of a trust asset. To comply with its fiduciary duties, the Division itself must obtain the appraisals on which it bases its decision.[9]

Accordingly, we stayed the pending exchange and remanded the case back to the Division "for a determination of whether the appraised values of section 16 and the Garfield County lands offered in exchange represent the full value of those lands."[10]

## II. THE CURRENT DISPUTE

¶6 Shortly after our decision in *NPCA I*, the legislature enacted the School and Institutional Trust Lands Management Act,[11] which replaced the Division with SITLA. Perhaps as a result of confusion surrounding this transfer of responsibilities, the independent appraisal and valuation mandated in *NPCA I* never occurred. The stay we imposed on the exchange of section 16 thus remained in effect.

¶7 Sometime in 2005, after receiving a third-party request to purchase certain of the lands exchanged by Garfield County for section 16, SITLA realized that neither it nor the Division had ever obtained the independent appraisal required to complete the exchange. Accordingly, it commissioned Stanford S. McConkie of Morley & McConkie, L.C., to conduct an appraisal of section 16 and the lands offered by Garfield County in exchange (the "McConkie Appraisal"). The McConkie Appraisal stated that section 16 was worth $200,000, while the total value of the lands offered by Garfield County in exchange was $661,200.

¶8 NPCA questioned the reliability of the McConkie Appraisal and commissioned a re-

6.  *NPCA I*, 869 P.2d at 911–12.

7.  *Id.* at 912.

8.  *Id.* at 916–21.

9.  *Id.* at 922.

10.  *Id.* at 923.

11.  Utah Code Ann. §§ 53C–1–101 to 53C–5–104 (2009).

view of the appraisal by J. Philip Cook and Virginia H. Hylton (the "Cook Review"). Although the Cook Review determined that the McConkie Appraisal complied with the Uniform Standards for Professional Appraisal Practice ("USPAP"), it proffered a higher estimate of section 16's value, based on a different view of the property's "highest and best use." NPCA also asserted that because the McConkie Appraisal was a limited restricted use appraisal report (a "limited appraisal"),[12] it was inadequate to assess the actual values of the parcels involved in the exchange.

¶ 9 On September 15, 2006, the SITLA Director formally determined that, according to the McConkie Appraisal and SITLA's own review, the school lands trust had received full value in exchange for section 16. Accordingly, the SITLA Director approved the exchange. NPCA timely appealed the Director's decision to the SITLA Board.[13]

¶ 10 In its petition for review of the Director's approval of the exchange, NPCA argued that (1) SITLA had improperly declined to consider the conflict between economic development and the protection of section 16's unique scenic, paleontological, and archaeological value; (2) the Director's approval of the exchange violated applicable law because section 16 constituted inadequate consideration for the lands Garfield County conveyed in exchange; and (3) the McConkie Appraisal did not satisfy the dictates of our remand in *NPCA I* because it was a limited appraisal rather than a full narrative appraisal and was methodologically flawed in other respects.

¶ 11 The Board first determined, on two separate grounds, that it lacked jurisdiction to consider NPCA's contention that the exchange of section 16 was invalid because

Garfield County received inadequate consideration. First, the Board reasoned that consideration of the issue was beyond the scope of our remand in *NPCA I*, which the Board concluded "was limited to determination of the adequacy of compensation to the school trust." Second, the Board found that "the legislature ha[d] not given [the] Board the authority to adjudicate whether Garfield County exceeded its powers by conveying lands for purportedly inadequate consideration."

¶ 12 Next, the Board determined that the McConkie Appraisal was adequate to satisfy SITLA's fiduciary obligations as outlined in *NPCA I*. According to the Board, this court's "directive was for an independent review of valuation, which was accomplished." The Board also determined that the McConkie Appraisal, even though it was a limited appraisal, was nonetheless adequate because it was undisputed that it complied with all professional surveying requirements for limited appraisals. In regard to NPCA's arguments that the McConkie Appraisal was methodologically flawed, the Board found that, under *NPCA I* and our prior decision in *Terracor v. Utah Board of State Lands & Forestry*,[14] third parties do not have standing to challenge executive branch real property transactions.

¶ 13 Finally, the Board also rejected NPCA's argument that SITLA breached its fiduciary duties by declining to reject the exchange based on section 16's unique non-economic value. The SITLA Board stated that "NPCA ha[d] completely misconstrued the obligation placed on SITLA" in *NPCA I*, and that it required consideration of noneconomic values only in some cases. The Board also determined that NPCA's arguments on this issue were barred by principles of res

---

12. A limited restricted use appraisal report is one prepared based on a specific agreement with the client allowing for certain departures from normal professional appraisal standards.

13. On the same day it appealed the Director's decision, NPCA also filed a rulemaking petition. This rulemaking petition was ultimately consolidated with NPCA's appeal of the Director's deci-

sion. But since NPCA's rulemaking petition is not before us on appeal and has no bearing on the resolution of this case, we do not consider either the Director's or the Board's treatment of the issue.

14. 716 P.2d 796 (Utah 1986).

judicata because this court had determined, in *NPCA I,* "that the Division had in fact adequately considered aesthetic and recreational values in deciding to exchange section 16" and had also appropriately declined to give such values priority over economic considerations.

¶ 14 Accordingly, the Board ruled that NPCA had failed to establish that the Director's approval of the section 16 exchange was unlawful and dismissed NPCA's appeal. NPCA timely filed a petition for review of final agency action with this court. We have jurisdiction pursuant to section 78A–3–102(3)(e)(iii) of the Utah Code.

## STANDARD OF REVIEW

■ ¶ 15 In reviewing a final action of the SITLA Board in a formal adjudicative proceeding, we grant relief only when the "person seeking judicial review has been substantially prejudiced" by, among other things, the agency's erroneous interpretation or application of the law.[15] A person is "substantially prejudiced" when the agency's erroneous interpretation or application is not harmless.[16] We review that agency's interpretation or application of the law for correctness.[17]

## ANALYSIS

¶ 16 We begin by discussing whether NPCA has standing to challenge the SITLA Board's determinations. Concluding that it does, we next turn to the issue of whether the SITLA Board erred in finding that it lacked jurisdiction to invalidate the exchange on the ground that Garfield County received inadequate consideration. We determine that the Board did not err. Finally, we address whether the SITLA Board correctly

found that the Director's reliance on the McConkie Appraisal was consistent with SITLA's trust obligations. We affirm the Board on that ground as well. In light of these determinations, we do not reach the parties' arguments regarding the scope of our remand in *NPCA I* or the extent to which NPCA's challenges may be barred by res judicata.

## I. NPCA HAS STANDING TO CHALLENGE THE ADEQUACY OF THE MCCONKIE APPRAISAL

■ ¶ 17 We first determine whether NPCA has standing to raise its challenges to the SITLA Director's decision to proceed with the exchange of section 16. On appeal, NPCA raises two challenges to the Director's decision. First, it asserts that the exchange is invalid because SITLA violated its trust obligations by approving the exchange of section 16 even though section 16 constituted inadequate consideration for the lands Garfield County conveyed in exchange. Second, it challenges whether the McConkie Appraisal satisfies the requirements of our *NPCA I* remand. We must determine whether NPCA has standing to bring each of these challenges.

¶ 18 We have recognized that parties may obtain standing under either the traditional or an alternative test.[18] In *NPCA I,* we analyzed NPCA's standing solely under the alternative test,[19] which requires that a party prove that it is an appropriate party to raise an issue of significant public importance.[20] We concluded that NPCA's challenges to the exchange of section 16 raised issues of great public importance regarding the administration of school trust lands and that NPCA, based on its interest and expertise, was an appropriate party to present these issues for

---

15. *See* Utah Code Ann. § 63G–4–403(4)(d) (2008).

16. *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.,* 2006 UT 74, ¶ 15, 148 P.3d 960.

17. *Id.* ¶¶ 9–10.

18. *Id.* ¶ 18.

19. 869 P.2d 909, 913 (Utah 1993).

20. *Utah Chapter of the Sierra Club v. Utah Air Quality Bd.,* 2006 UT 74, ¶ 35, 148 P.3d 960.

judicial resolution.[21] Because this case grows out of our decision in *NPCA I* and challenges the same conveyance for which we found alternative standing in that case, we see no reason why our determination that NPCA had standing to challenge the exchange of section 16 in *NPCA I* does not apply to its challenges in this case.

¶ 19 SITLA argues that the issue of public importance justifying our finding of alternative standing in *NPCA I* is not implicated by NPCA's challenges in this case. Specifically, SITLA contends that the sole issue justifying alternative standing in *NPCA I* was whether the state was required to give priority to "unique scenic, recreational, archaeological, and paleontological values" in administering school trust lands.[22] SITLA asserts that this court, in *NPCA I,* "fully resolved the policy issues before it" and therefore "no such significant policy issues are present on remand."

¶ 20 We disagree. In *NPCA I,* we reached the merits of NPCA's claims that SITLA breached its fiduciary duties by approving the exchange based on an unreliable appraisal.[23] And although NPCA's claims in this case are somewhat refined given our resolution of *NPCA I,* the essence of NPCA's challenges in this case is the same. Accordingly, our grant of standing in *NPCA I* is fully determinative of the standing issue in this case. We now turn to the merits of NPCA's claims.

## II. SITLA DID NOT BREACH ITS FIDUCIARY DUTIES BY APPROVING THE EXCHANGE OF SECTION 16

¶ 21 NPCA argues that the SITLA Board should have reversed the Director's decision on two separate grounds: (1) SITLA breached its duty to ensure that trust lands are managed according to applicable law by approving a transaction that resulted in Garfield County receiving inadequate consideration, and (2) SITLA breached its duty to base its exchange decision on a reliable appraisal by relying on the McConkie Appraisal to approve the exchange.[24] We affirm the Board's determinations that (1) the SITLA Board was without jurisdiction to invalidate the exchange based on the amount of consideration received by Garfield County and (2) the McConkie Appraisal is not per se unreliable simply because it is a limited appraisal.

*A. The SITLA Board Correctly Determined That It Lacked Jurisdiction to Invalidate the Exchange of Section 16 on the Ground That Garfield County Received Insufficient Consideration*

¶ 22 NPCA contends that the SITLA Board should have found that the Director's decision to approve the exchange of section 16 violated SITLA's fiduciary duties because it was not in accordance with "applicable law." Section 53C–1–304(4)(a) of the Utah Code provides that the Board, in reviewing a decision of the SITLA Director, should reverse the decision only when "it finds, by a preponderance of the evidence, that the decision violated applicable law, policy, or rules." NPCA claims that the exchange violated applicable law because section 16 constituted inadequate consideration for the lands Garfield County conveyed in exchange.

¶ 23 We determine that the SITLA Board's jurisdiction extends only to ensuring that SITLA complied with its own statutory

21. *NPCA I,* 869 P.2d at 913–14.

22. *Id.* at 914.

23. *See id.* at 917–23 (reaching the merits of both issues).

24. Before the SITLA Board, NPCA also argued that SITLA had breached its trust obligations by failing to adequately consider section 16's unique noneconomic attributes in approving the exchange. The Board ruled against NPCA on this issue and NPCA seems to have abandoned that version of its argument on appeal. NPCA no longer argues that the exchange should be reversed because of SITLA's inadequate consideration of section 16's noneconomic attributes. Instead, it bases its argument for reversing the exchange on the other grounds addressed in our opinion and mentions consideration of noneconomic factors only as an alternative management strategy for section 16 that NPCA believes would be consistent with SITLA's trust obligations. Because we affirm the Board's findings that the exchange was lawful, we do not reach this issue.

and fiduciary duties. As a result, we conclude that because SITLA was under no duty to ensure that Garfield County obtained adequate consideration in the exchange, the SITLA Board correctly determined that it had no jurisdiction to invalidate the exchange of section 16 on this ground.

▮ ¶ 24 As a statutorily created body of limited jurisdiction, the SITLA Board may rule only on issues over which it has been granted subject matter jurisdiction by the legislature.[25] And, according to statute, the Board's authority as an adjudicative body is limited to reviewing the actions of SITLA and its director regarding the management of the school trust lands in order to ensure that those decisions are consistent with applicable law.[26] In other words, the Board exists to ensure that the school trust lands are managed in accordance with the constitutional, statutory, and fiduciary duties imposed on SITLA by virtue of its position as trustee.

¶ 25 These duties do not include monitoring whether Garfield County received adequate consideration. Instead, SITLA is obligated, according to general trust law, to manage the trust lands in the interests of the beneficiaries—the public school system and its students.[27] Statutorily, SITLA is required to manage the trust lands "in the manner ... most favorable to the beneficiaries"[28] and is charged with "maintain[ing] the integrity of the trust and prevent[ing], through prudent management, the misapplication of its lands and revenues."[29] None of the laws governing SITLA impose a duty to monitor the actions of third parties for compliance with those parties' own separate legal duties. SITLA's fiduciary responsibilities run to the school lands trust and its beneficiaries, not to third parties such as Garfield County.

¶ 26 NPCA argues that the SITLA Board's authority to reverse a decision of the SITLA Director that violates applicable law, policy, or rules authorizes the Board to determine, in this case, whether Garfield County received adequate consideration. This argument presumes that the statutory provision confers authority on the SITLA Board to examine and rule on the legality of all aspects of the action approved by the SITLA Director. In other words, NPCA proposes that the authority to make general determinations regarding the legality of the exchange between SITLA and Garfield County is part and parcel of the SITLA Board's mandate to determine whether the SITLA Director's decision conformed to applicable law.

¶ 27 This reading stretches the statute too far, essentially converting the SITLA Board into a court that passes judgment on the action of involved third parties under the guise of reviewing the actions of SITLA and its Director. Although the statute creating the SITLA Board charges it with the responsibility of ensuring that SITLA is managed according to law, the clear intent of the statutory provisions defining the SITLA Board's purpose and authority is to enable the Board to determine whether the Director is managing SITLA in accordance with its

**25.** *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.,* 901 P.2d 1017, 1021 (Utah 1995) ("When a 'specific power is conferred by statute upon a tribunal, board, or commission with limited powers, the powers are limited to such as are specifically mentioned.'" (quoting *Union Pac. R.R. v. Pub. Serv. Comm'n,* 103 Utah 186, 134 P.2d 469, 474 (1943))).

**26.** *See* Utah Code Ann. § 53C–1–304(4)(a) (2009) ("The board shall uphold the decision of the director or the administration unless it finds, by a preponderance of the evidence, that the decision violated applicable law, policy, or rules."); *see also id.* § 53C–1–204(2) ("The board shall ensure that the administration is managed according to law.").

**27.** *NPCA I,* 869 P.2d at 918 ("The duties of a trustee apply to the state in administering school trust lands. All trustees owe fiduciary duties to the beneficiaries of the trust. The duty of loyalty requires a trustee to act only for the benefit of the beneficiaries and to exercise prudence and skill in administering the trust." (citations omitted)).

**28.** Utah Code Ann. § 53C–1–302(1)(b)(iv).

**29.** *Id.* § 53C–1–302(3).

fiduciary and statutory obligations. Accordingly, the scope of the Board's authority to review SITLA's actions is limited to "decision[s] of the director or the administration."[30] And the SITLA Director's decision to approve a transaction is distinct from the separate decision of a third party—such as Garfield County in this case—to enter into a transaction with SITLA.

¶ 28 Thus, the Board is not authorized to pass judgment on whether third parties have fulfilled their own independent legal responsibilities because the Board's review authority only extends to actions taken by SITLA or its Director. It is up to Garfield County, not SITLA, to ensure that its actions comport with its legal obligations. Since there is no duty on the part of SITLA or its Director to ensure that Garfield County has been adequately compensated, the Board is not the appropriate decision-making body to assess the legality of Garfield County's actions. Accordingly, we affirm the SITLA Board's determination that it lacked jurisdiction to invalidate, based on the amount of consideration received by Garfield County, SITLA's decision to approve the exchange of section 16.

### B. The McConkie Appraisal Is Not Unreliable Simply Because It Is a Limited Appraisal

¶ 29 NPCA also argues that SITLA wrongfully relied on the McConkie Appraisal because the McConkie Appraisal is unreliable given that it is a limited appraisal rather than a full narrative appraisal. Noting that limited appraisals are based on undisclosed agreements with the client that allow for certain departures from normal required appraisal procedures, NPCA contends that these departures impact the ultimate valuation and make it impossible for third parties (who are not privy to the agreement between the appraiser and the client) to evaluate the correctness of the appraisal's conclusions.

¶ 30 We reject NPCA's suggestion that SITLA can never use limited appraisals as a basis for its management decisions over school trust lands. While it is true that, in *NPCA I*, we acknowledged that the Division had a duty to obtain "reliable appraisals,"[31] our conclusion that nonindependent appraisals were per se unreliable was based on our determination that a nonindependent appraisal was "suspect on its face" because of the incentive and opportunity of the interested party to shop for favorable appraisals.[32] It was the suspect motive that made the reliance on nonindependent appraisals per se unreasonable.

¶ 31 This concern is absent when the appraisal, although limited in scope and purpose, is independently commissioned by SITLA. There is nothing inherently unreliable about limited appraisals. Such appraisals are obtained for a specific purpose, and, given the context in which they will be used, may not require the same panoply of procedures and considerations that enable a full appraisal to be deemed reliable for all purposes. Therefore, because limited appraisals are not inherently unreliable, the decision to rely on such an appraisal in managing school trust lands is one that is within the discretion of SITLA, as trustee, to make.

¶ 32 We emphasize that SITLA's discretion to obtain and rely on a limited appraisal does not mean that its decision to do so is immune to challenge. If a third party suspects that a limited appraisal is inaccurate and therefore that a certain management decision based on that appraisal is not consistent with SITLA's obligations as trustee, it may challenge the transaction in the same way it would challenge a transaction based on the conclusions of a full narrative appraisal.[33] Therefore, if the party can establish

**30.** *Id.* § 53C–1–304(4)(a).

**31.** 869 P.2d 909, 921–22 (Utah 1993).

**32.** *Id.* at 922.

**33.** Even though limited appraisals are based on undisclosed agreements with the client regarding (1) the purpose of the appraisal and (2) the allowed departures from normal professional surveying standards, this does not prevent the party from being able to assess the limited ap-

that (1) the limited appraisal's valuation conclusions are erroneous and (2) SITLA's reliance on these erroneous conclusions fell below the standard of care imposed on it as trustee by law, then the action by SITLA should be set aside as a breach of trust. We simply make clear that a party challenging SITLA's actions is not entitled to have the actions set aside solely because SITLA took those actions in reliance on a limited appraisal.

¶ 33 In this case, NPCA has pointed to statements in both the Cook Review and the original McConkie Appraisal that suggest the McConkie Appraisal's valuation of section 16 may be inaccurate. But NPCA only argues that the McConkie Appraisal *overvalues* section 16. In other words, NPCA contends that, had the McConkie Appraisal valued section 16 correctly, it would have revealed that SITLA obtained an even better bargain for the school trust.

¶ 34 Therefore, even if NPCA is correct in concluding that the McConkie Appraisal was technically defective, it acknowledges that section 16's value is no greater than $200,000, or more than three times less than the value of the lands that SITLA received in exchange. In light of our holding that the inadequacy of consideration received by Garfield County provides no basis for the SITLA Board to set aside the exchange, the errors that NPCA alleges occurred with the McConkie Appraisal—even if true—fail to show that the SITLA Director's decision was in breach of SITLA's trust obligations. Accordingly, we decline to reach NPCA's specific arguments regarding the flaws in the McConkie Appraisal and affirm the SITLA Board's determination that the Director's decision was consistent with SITLA's fiduciary duties as trustee.

## CONCLUSION

¶ 35 We hold that NPCA has standing to challenge the SITLA Director's decision to

exchange section 16. But we conclude that the SITLA Board correctly determined that SITLA's approval of the exchange of section 16 was consistent with its trust obligations. Accordingly, we affirm the Board's dismissal of NPCA's appeal.

¶ 36 Justice WILKINS and Justice PARRISH concur in Associate Chief Justice DURRANT's opinion.

NEHRING, Justice, dissenting:

¶ 37 I respectfully dissent. I believe the difference in value between section 16 and the property that SITLA was to receive from Garfield County is so great that it violated the clear and unequivocal constitutional and statutory proscription against transferring public property for less than fair market value. NPCA argues, persuasively in my view, that the Board erred because the remand in *NPCA I* was not limited to directing that an unbiased appraisal be obtained for the section 16 lands, but that it also mandated review of the relative value of the lands exchanged. NPCA's reasoning for this interpretation of our mandate on remand turns on its view that an unbiased appraisal was merely the means to achieve the end of ensuring that an accurate value for *both* parcels was ascertained, resulting thereby in a lawful, fair exchange. NPCA also argues that the remand for a new appraisal did not preclude a subsequent challenge to the equality of the exchange based on information found in the appraisal. In support of this position, NPCA points to language in *NPCA I* stating that the Board is subject to a broad duty to "act according to applicable law." 869 P.2d 909, 921 n. 9 (Utah 1993). NPCA points out that the law requires the county to receive fair market value for the property it gave up in the exchange. *See Price Dev. Co. v. Orem City*, 2000 UT 26, 995 P.2d 1237; *Salt Lake County Comm'n v. Salt Lake County Att'y*, 1999 UT 73, 985 P.2d 899; *Mun. Bldg. Auth. of Iron County v. Lowder*, 711 P.2d 273

praisal's reliability. The challenging party is always free to perform its own independent appraisal review (as NPCA did here) or to obtain,

through discovery, the actual agreement between SITLA and the appraiser that sets forth the purpose and specific limitations of the appraisal.

(Utah 1985); *Sears v. Ogden City,* 572 P.2d 1359 (Utah 1977).

¶ 38 The mandate rule "dictates that pronouncements of an appellate court on legal issues in a case become the law of the case and must be followed in subsequent proceedings of that case." *Thurston v. Box Elder County,* 892 P.2d 1034, 1037–38 (Utah 1995). In proceedings on remand, an "unwavering fidelity to the letter and spirit of the mandate" is required. *Campbell v. State Farm Mut. Auto. Ins. Co.,* 2004 UT 34, ¶ 5, 98 P.3d 409. This does not mean, however, that the remand "elevates all of the statements in the . . . opinion to the status of a holding, thereby binding [the SITLA board] to what would otherwise be properly deemed dicta." *Id.* ¶ 6.

¶ 39 Our starting point for determining the letter and the spirit of the *NPCA I* remand is the text of the case itself. The *NPCA I* conclusion states:

> We remand this case to the Division for a determination of whether the appraised values of *section 16 and* the Garfield County lands offered in exchange represent the full value of *those* lands.

> The stay presently in effect will continue until the Division makes the requisite determinations that the value of the land exchanged for section 16 is adequate under its trust obligations.

*NPCA I,* 869 P.2d at 923 (emphasis added).

¶ 40 This articulation of our mandate centers on the obligation to lawfully determine value of the properties. The appraisal is an instrument in the service of the quest for value.

¶ 41 The first paragraph of the *NPCA I* conclusion clearly speaks to appraisals of both section 16 and the Garfield County land. It also indicates that the purpose of the appraisal should be to determine the full value of the lands. In order to determine the full value of the lands, an accurate appraisal is required. Although we did not address the merits of NPCA's request for

declaratory action on this issue in *NPCA I,* we did acknowledge that "NPCA had a legal interest for the purpose of a declaratory ruling in determining whether the Division was using correct appraisal procedures with respect to trust lands." *Id.* at 916. The requirement that the appraisal use correct appraisal standards is logically included within the direction to determine "whether the appraised values of section 16 and the Garfield County lands offered in exchange represent the full value of those lands." *Id.* at 923. Procuring an appraisal by an unbiased appraiser does nothing to contribute to the goal of determining the real value of the lands if the appraisal is materially flawed. The majority grounds its ratification of SITLA's conduct on the conclusion that the SITLA board had no jurisdiction to oversee the Garfield County side of the land exchange. SITLA's duties were limited to "actions of SITLA and its director." Although the majority does not speak directly to the question of the scope of our remand in *NPCA I,* it would be fair to infer that our remand mandate cannot be interpreted to confer jurisdiction on SITLA which has not been conferred by statute.

¶ 42 NPCA urges us to interpret our remand instructions to extend beyond an examination of the adequacy of the appraisal and to encompass an examination of whether the exchange was fair to Garfield County. The NPCA argument that we should evaluate whether the exchange was fair to both parties is based on language in a footnote responding to an argument made in a concurring opinion. The concurrence pointed out that although "the state's duties to the school system are important, they cannot and do not override every other obligation" and that "[a] . . . trustee must manage trust property in accordance with the law, and a trustee's duty to obey the law is higher than his or her duty to the beneficiaries." *NPCA I,* 869 P.2d at 923 & n. 1 (Durham, J., concurring in the result). The majority responded, agreeing in part. It stated that "trustees have a duty to act according to applicable law." *Id.* at 921 n. 9. NPCA relies on this phrase to support its argument that, with an unbiased appraisal in hand, we should now examine the results

of that appraisal to determine whether the exchange was lawful. It argues that an examination of the exchange demonstrates that it was unfair to the county and therefore unlawful.

¶ 43 In the portion of *NPCA I* discussing the duty of the trustee to obtain reliable appraisals, we pointed out that the problem with allowing the buyer to obtain the appraisal is that it gives the buyer "the opportunity to shop for favorable appraisals" and "leave[s] the trust subject to sharp dealing on the part of the purchaser." *Id.* at 922. Although the section on appraiser bias was concerned primarily with the potential injury to the trust and our analysis elsewhere in *NPCA I* focused primarily on whether noneconomic factors should be given preference over the goal of maximizing trust income, we did acknowledge that part of our inquiry in the case was "whether the Division properly administered the school land trust." *Id.* at 916. Additionally, we noted that "[c]ourts generally have broader powers in trust cases in making certain that trusts are properly administered" in holding that NPCA had a limited right of intervention on the issue of whether "the Division breached its trust duty by not securing appraisals for both section 16 and Garfield County's land from appraisers either retained or employed by the Division." *Id.* at 922 & n. 11.

¶ 44 Determining SITLA's treatment of noneconomic factors and its use of a biased appraisal were constituent elements of the larger issue of whether SITLA properly administered the trust when making the land exchange. Just because we decided those two elements, however, does not necessarily preclude other errors of trust administration from being raised once a valid appraisal is obtained. Because lawfulness of the trust administration was a concern in *NPCA I* and an unequal exchange could potentially be unlawful, the scope of the remand alone does not preclude us from considering NPCA's argument.

¶ 45 Chief Justice DURHAM concurs in Justice NEHRING's dissenting opinion.