2012 UT 76

**Employers' REINSURANCE FUND, and Sunnyside Coal Company, Petitioners,**

v.

**LABOR COMMISSION and Cecil Henningson, Respondents.**

**Nos. 20110033, 20110055.**

Supreme Court of Utah.

Nov. 6, 2012.

---

Edwin C. Barnes, Wendy Bowden Crowther, Robert D. Andreasen, Hans M. Scheffler, Salt Lake City, for petitioners.

T. Jeffery Cottle, Salt Lake City, for respondent.

Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 Sunnyside Coal Company, the Workers' Compensation Fund, and the Employers' Reinsurance Fund (collectively, Petitioners) challenge the Labor Commission's award of

permanent total disability benefits to claimant Cecil Henningson. Petitioners argue that the award is barred under the relevant statute of limitation, which prevents the Labor Commission from acquiring jurisdiction and making the award. We conclude that the Commission correctly determined that it had original jurisdiction over the claim and also correctly exercised its continuing jurisdiction in awarding compensation. Because of the long delay in bringing the claim, however, we hold that Mr. Henningson's recovery is equitably limited. The Employers' Reinsurance Fund (ERF) is obliged to pay only prospective benefits from the date of filing, and Sunnyside Coal Company (Sunnyside) and the Workers' Compensation Fund (WCF) are not liable for any permanent total disability benefits. We therefore affirm the Commission's award of permanent total disability benefits but remand for a determination of the correct amount of compensation.

## BACKGROUND

¶ 2 On October 13, 1993, Mr. Henningson injured his back in the course of his employment with Sunnyside Coal Company. Consistent with Utah administrative law, he timely reported the injury to his employer, who filed all required reports with the Labor Commission. WCF paid Mr. Henningson temporary total and permanent partial disability benefits from October 14, 1993 through June 8, 1995.

¶ 3 In January 1994, Mr. Henningson underwent back surgery. Mr. Henningson had undergone two previous back surgeries because of earlier work-related injuries, and after recovering from each surgery, Mr. Henningson had returned to work. In December 1994, Mr. Henningson's physician declared him medically stable and placed him in the "light work" category.

¶ 4 In May 1994, Mr. Henningson filed for social security disability benefits. In April 1995, the Social Security Administration determined Mr. Henningson was disabled and unable to work, and awarded full disability compensation backdated to the day after the injury.

¶ 5 In February 1997, Mr. Henningson's physician altered his evaluation and declared him "totally and permanently disabled" in a report to WCF, stating that he had been unable to work since 1993. After the date of the accident, Mr. Henningson never returned to work or looked for other employment. But Mr. Henningson's physician found him to be compliant with treatment efforts and wanting to return to work throughout the recovery process.

¶ 6 Ten years later, in March 2007, Mr. Henningson filed an "Application for Hearing–Form 001" with the Commission requesting permanent total disability benefits. At the hearing, the administrative law judge exercised the Commission's continuing jurisdiction and granted Mr. Henningson's claim, making a tentative finding of permanent total disability beginning December 16, 1994. On review, the Commission affirmed the administrative law judge's order, basing its authority to exercise its continuing jurisdiction on the inadequacy of Mr. Henningson's previous award. The Commission modified the administrative law judge's order to correct several errors in calculating the allocation of liability between WCF and ERF, backdating the permanent total disability payments to December 16, 1994, and crediting WCF for its payments for permanent partial disability, but not for temporary total disability.

¶ 7 Petitioners appealed the award of permanent total disability benefits to the Utah Court of Appeals, which heard oral argument and then certified the case to us. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b).

## STANDARD OF REVIEW

¶ 8 Under the Utah Administrative Procedures Act, an appellate court has authority to grant relief if "a person seeking judicial review has been substantially prejudiced ... [because] the agency has erroneously interpreted or applied the law." Utah Code § 63G–4–403(4)(d). "A person is 'substantially prejudiced' when the agency's erroneous interpretation or application is not harmless. We review that agency's interpretation or application of the law for correctness." *Nat'l Parks Conservation Ass'n v.*

*Bd. of Trs. of Sch. & Inst'l Trust Lands Admin.,* 2010 UT 13, ¶ 15, 231 P.3d 1193 (footnote omitted).

## ANALYSIS

¶ 9 Petitioners raise three arguments on appeal. First, they contend that the Commission cannot modify Mr. Henningson's award because it did not establish original jurisdiction over the claim within the six-year statute of limitation. Alternatively, they argue that even if the Commission acquired original jurisdiction, it cannot exercise its continuing jurisdiction because there was no change of condition or inadequacy in the previous award as required by our case law. Finally, ERF argues that even if Mr. Henningson is entitled to permanent total disability benefits, it would be unfair to backdate his award to the date of the accident when he waited almost fourteen years to file his claim. We hold that the Commission acquired original jurisdiction and appropriately exercised its continuing jurisdiction in Mr. Henningson's case, but that Mr. Henningson is equitably barred from receiving permanent total disability benefits prior to 2007, when he filed his claim for such benefits.

## I. ORIGINAL JURISDICTION

■ ¶ 10 Petitioners argue the Commission lacks original jurisdiction over Mr. Henningson's claim for permanent total disability benefits because Mr. Henningson failed to file documents within the six-year statute of limitations sufficient to invoke jurisdiction. *See* UTAH CODE § 35–1–98(2) (1993).[1] Mr. Henningson counters that under *Vigos v. Mountainland Builders, Inc.,* 2000 UT 2, 993 P.2d 207, his claim is not barred for lack of jurisdiction, because although he did not file a formal application for hearing, he filed other documents sufficient to establish original jurisdiction. We agree with Mr. Henningson that the Commission has original jurisdiction over his claim.

¶ 11 The Commission acquires original jurisdiction over a claim when the appropriate documentation is filed, giving notice to the interested parties. Section 35–1–98(2) pro-

vides that "[a] claim for compensation for temporary total disability benefits, temporary partial disability benefits, permanent partial disability benefits, or permanent total disability benefits is barred, unless an application for hearing is filed with the commission within six years after the date of the accident." Thus, a claim must be filed within the six-year limitation period.

■ ¶ 12 *Vigos* clarified the requirements for invoking the Commission's jurisdiction under section 35–1–98(2). Under the plurality opinion in *Vigos,* the statutory term "application for hearing" does not create a formal requirement to file a specific document, but rather requires a filing sufficient to provide notice to all interested parties. *See* 2000 UT 2, ¶ 17, 993 P.2d 207 (plurality opinion). *Vigos* explains that "a claim for compensation need not bear any particular formality." *Id.* (quoting *Utah State Ins. Fund v. Dutson,* 646 P.2d 707, 709 (Utah 1982)). In *Dutson,* "all interested parties ... were on notice of Dutson's claim and were duly apprised of the material, jurisdictional facts upon which the claim was based." 646 P.2d at 709. The court therefore concluded that the Commission had original jurisdiction because "the form and substance of the documents filed with the Commission were adequate within the meaning, purpose and intent of the statutes." *Id.* Today, we adopt the reasoning of the *Vigos* plurality. Thus, although filing a formal application for hearing within six years of an industrial injury vests the Commission with jurisdiction, other methods that give adequate notice of the relevant information to all parties are also sufficient.

■ ¶ 13 Allowing for less formal methods of notice to establish the Commission's jurisdiction is consistent with the general purpose of statutes of limitations. "Statutes of limitations are intended to prevent unfair dilatory litigation against a defendant and to require that claims be litigated while proper investigation and preservation of evidence can occur." *Vigos,* 2000 UT 2, ¶ 22, 993 P.2d 207. *Vigos* further notes that industrial accidents are generally investigated and docu-

---

1. We cite the law in effect at the time of Mr. Henningson's injury.

mented in depth, and suggests that therefore stale evidence or missing witnesses are of less concern than in other areas. *See id.* ¶ 23. Additionally, claimants have no incentive to intentionally delay and surprise a defendant with litigation many years after an accident. The claimant bears the burden of showing causation between the injury and the industrial accident, *see Allen v. Indus. Comm'n,* 729 P.2d 15, 18 & n. 2 (Utah 1986), which only becomes more difficult with time.

■ ¶ 14 Allowing informal applications for hearing under section 35–1–98(2) also furthers the principles on which the Workers' Compensation Act (WCA) is based. "The purpose of the [WCA] is to provide relief from industrial accidents." *Vigos,* 2000 UT 2, ¶ 24, 993 P.2d 207. The WCA simplifies the process of awarding compensation for industrial accidents, thereby helping injured workers receive benefits and employers avoid tort lawsuits. *See Stoker v. Workers' Comp. Fund,* 889 P.2d 409, 411 (Utah 1994). Workers' compensation statutes are to be construed "liberally in favor of finding employee coverage." *Olsen v. Samuel McIntyre Inv. Co.,* 956 P.2d 257, 260 (Utah 1998). Finally, the Commission's own policies demand acceptance of informal notice to conform to the WCA's purposes. Because a formal application for hearing is filed only when a claim is denied, predicating jurisdiction on its filing would either arbitrarily favor claimants who are initially denied compensation or require every injured worker seeking benefits to file a speculative formal application for hearing simply to preserve access to potential additional benefits at some future date. "To hold otherwise would result in workers bringing formal administrative proceedings for almost every accident, regardless of disputed liability, to insure that any future related problems would be covered." *Vigos,* 2000 UT 2, ¶ 21, 993 P.2d 207.

¶ 15 Here, Mr. Henningson meets the requirements of section 35–1–98(2), as clarified by *Vigos,* and the Commission has original jurisdiction over his claim. Mr. Henningson filed the appropriate documents with the Commission to give notice to Sunnyside and WCF, the interested parties, immediately after his accident. A finding of original jurisdiction aligns with the purpose and intent of the WCA as liberally construed in favor of coverage. Finally, the Commission's standard filing requirements allow for informal notice and require a formal application for hearing only when a claim is denied.

■ ¶ 16 ERF argues that, unlike Sunnyside and WCF, it was not given appropriate notice as an interested party because it was first notified of Mr. Henningson's claim in 2007, when he filed a formal application for hearing with the Commission seeking permanent total disability benefits. We disagree.

¶ 17 In *Paoli v. Cottonwood Hospital,* ERF's predecessor, the Second Injury Fund (SIF),[2] was ordered to pay disability benefits to an injured worker despite never having been made a party to the administrative proceedings that led to the judgment. 656 P.2d 420, 421 (Utah 1982). *Paoli* clarifies that SIF is a "separate entity" that is entitled to notice when its interests are involved so it can choose to defend them if necessary. *Id.* at 422–23. SIF is entitled to receive notice "once the prospect of Second Injury Fund liability appears." *Id.* at 422. *Paoli* thus prohibited assigning liability to SIF when it had received *no* notice and was therefore unable to defend itself. *Id.* at 423. Instead, SIF (or ERF) must be notified at the point when its interests are implicated.

¶ 18 The point at which ERF's interests are implicated is determined by statute. Liability arises when "an employee, who has at least a 10% whole person permanent impairment from any cause or origin, subsequently incurs an additional impairment by an accident arising out of and in the course of the employee's employment, and ... the additional impairment results in permanent total disability." UTAH CODE § 35–1–69 (1993).

2. ERF was previously known as SIF. "The Employers' Reinsurance Fund succeeds to all money previously held in the 'Special Fund,' the 'Combined Injury Fund,' or the 'Second Injury Fund.'" UTAH CODE § 34A–2–702(1)(b); *see also Stouffer Food Corp. v. Labor Comm'n,* 970 P.2d 272, 274 n. 3 (Utah Ct.App.1998) ("References to the 'Special Fund,' the 'Combined Injury Fund,' or the 'Second Injury Fund' are permutations of what is now referred to as the Employers' Reinsurance Fund.").

Because ERF does not incur liability until a claimant files for permanent total disability, ERF's liability may sometimes arise later than that of other parties, appropriately resulting in later notice. For example, both an employer and its primary insurer immediately receive notice of any compensable injury; ERF, a secondary insurer, may not be notified immediately if the worker is not immediately found to be permanently and totally disabled. Requiring notice to ERF before a claim is filed for permanent total disability benefits would be impractical and ineffective for the same reasons discussed in *Vigos:* all injured workers would need to file a formal application for hearing to preserve their rights with respect to ERF in the event the injury ever progressed to permanent total disability. 2000 UT 2, ¶ 21, 993 P.2d 207.

¶ 19 Here, Mr. Henningson received permanent partial and temporary total disability benefits from Sunnyside and WCF after his injury. Because ERF had no prospect of liability at that time, it was not yet entitled to notice. ERF was appropriately notified of the claim in 2007 when Mr. Henningson filed a formal application for hearing requesting permanent total disability benefits, enabling it to participate in the proceedings and defend its interests if it chose. Although in this case ERF's liability did not arise for almost fourteen years after the original injury,[3] ERF was appropriately notified at that time and was able to represent itself at the proceedings before the administrative law judge and the Commission.

## II. CONTINUING JURISDICTION

¶ 20 Mr. Henningson argues that the Commission was correct in exercising its continuing jurisdiction, reopening his claim, and awarding him permanent total disability benefits because his previous award was inadequate. Petitioners counter that the award was adequate because Mr. Henningson received all the benefits he requested, even though he knew he was permanently and totally disabled as early as 1994 and could have requested permanent total disability benefits much earlier. We agree with Mr. Henningson.

■■■ ¶ 21 The Commission's continuing jurisdiction allows it to reopen and modify an award at any time.[4] Section 35–1–78 states in relevant part:

> (1) The powers and jurisdiction of the commission over each case shall be continuing. The commission, after notice and hearing, may from time to time modify or change its former findings and orders. Records pertaining to cases that have been closed and inactive for ten years, other than cases of total permanent disability or cases in which a claim has been filed as in Section 35–1–98, may be destroyed at the discretion of the commission.
>
> . . . .
>
> (3)(a) This section may not be interpreted as modifying in any respect the statutes of limitations contained in other sections of this chapter. . . .
>
> (b) The commission has no power to change the statutes of limitation referred to in Subsection (a) in any respect.

UTAH CODE § 35–1–78 (1993). "Section 35–1–78 imposes no time limit on the Commission's continuing jurisdiction." *Vigos v. Mountainland Builders, Inc.,* 2000 UT 2, ¶ 27, 993 P.2d 207 (plurality opinion).[5] This policy benefits employees because the award can be modified to ensure adequate compensation, and also benefits employers by allowing modification to avoid overcompensation. *Id.*

---

3. ERF argues that it was prejudiced by its lack of opportunity to rehabilitate Mr. Henningson. However, ERF is not statutorily required to rehabilitate until after a tentative finding of permanent total disability by the Commission. *See* UTAH CODE § 35–1–67(5)(a)(ii) (1993). Rehabilitation previous to a finding of permanent total disability is the responsibility of the employer or the primary insurer. *See id.* §§ 35–10–6, 35–10–7. Here, the Commission did not tentatively find permanent total disability until 2007.

4. In 1999, the legislature instituted a twelve-year limit to the Commission's continuing jurisdiction to modify an award. *See* UTAH CODE § 34A–2–417(2)(a)(ii). However, because Mr. Henningson's accident occurred in 1993, this statute of repose is not applicable here.

5. As discussed above, today we adopt the reasoning of the *Vigos* plurality. *Supra* ¶ 12.

■ ¶ 22 We have generally interpreted section 35–1–78 in light of its overall purpose of compensating injured workers, with an emphasis on substantive rights, consistent with the policies behind the WCA. We construe the WCA "liberally in favor of finding employee coverage." *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 260 (Utah 1998). Further, the WCA is intended to favor substantive rights over technicalities. *Frito–Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 28, 222 P.3d 55 (allowing continuing jurisdiction in order to correct a clerical error).

■ ¶ 23 The statutory language of section 35–1–78 does not impose any specific requirements on the Commission's exercise of continuing jurisdiction. However, this court has recognized two appropriate bases for reopening and reevaluating an award: (1) a change in condition or new development or (2) the inadequacy of a previous award. *E.g.*, *Ortega v. Meadow Valley Constr.*, 2000 UT 24, ¶ 10, 996 P.2d 1039. Because the application of these bases has not always been clear, it is useful to articulate the central principle behind both: to ensure fair compensation for both injured workers and employers, the Commission may exercise its continuing jurisdiction where a claimant's medical condition deviates from its anticipated course. The common law provides useful guidance regarding when it is appropriate for the Commission to exercise its continuing jurisdiction under section 35–1–78.

¶ 24 The first basis, a change in condition or new development, was first explicitly stated in *Salt Lake City v. Industrial Commission*, 61 Utah 514, 215 P. 1047 (1923). In that case, this court held that although the Commission may not arbitrarily modify a previous award, "[i]t may often happen that some material change in the condition of applicant's injury may occur after an award has been made, in which justice to one or the other of the parties litigant might demand a further hearing of the cause." *Id.* at 1048. The change in condition basis thus recognizes the unpredictability of individual health and the possibility of medical advances, allowing for adjustments if the claimant's health either deteriorates or improves.

¶ 25 The change in condition basis was further developed in *Aetna Life Insurance Co. v. Industrial Commission*, 73 Utah 366, 274 P. 139 (1929). *Aetna* involved a worker who applied for additional benefits after failing to recover as expected from a back injury. *Id.* at 141. The insurance company argued that because the claimant's condition had not worsened, the claim did not qualify under the change in condition requirement and so was barred. *Id.* The court disagreed, holding that "the fact that there was no change where one was expected for the better, when the award was made, was itself sufficient to invoke the jurisdiction." *Id.* at 144.

¶ 26 The second basis thus emerged from *Aetna* to cover circumstances in which a claimant's condition did not worsen, but anticipated improvement in the claimant's condition did not occur. Therefore, additional compensation through the exercise of the Commission's continuing jurisdiction was necessary to fully and fairly compensate the injured worker. *See, e.g.*, *Spencer v. Indus. Comm'n*, 733 P.2d 158, 161–62 (Utah 1987) (per curiam) (holding that the Commission had continuing jurisdiction because of the inadequacy of the previous award where claimant's attempts to work failed due to his injuries); *Buxton v. Indus. Comm'n*, 587 P.2d 121, 122, 124 (Utah 1978) (holding that award could be modified to permanent total disability even after a lapse of eight years where it was determined that claimant could not be rehabilitated); *Kennecott Copper Corp. v. Indus. Comm'n*, 19 Utah 2d 158, 427 P.2d 952, 953–54 (1967) (holding that the Commission lacked jurisdiction where it rescinded an order denying compensation made less than two months before without any showing by the claimant of the inadequacy of the award).

¶ 27 These bases for the exercise of continuing jurisdiction are directly related to the practicality of administering justice to injured workers and the realities and limitations of medical diagnoses and procedures. They are firmly anchored in the intent and purpose of the WCA and, like workers' compensation statutes, are to be construed liberally. "[T]he beneficial effect of continuing

jurisdiction is to keep the worker's opportunity for additional benefits alive where he has once complied with the six-year statute of limitations." *Ortega*, 2000 UT 24, ¶ 10, 996 P.2d 1039. Therefore, we find it most helpful to focus on the principle behind these bases for the Commission's exercise ~~its~~ of continuing jurisdiction. When an injured worker's award is based on information or facts that change or do not evolve as expected, it is appropriate for the Commission to reevaluate the award to ensure fairness to both the worker and the insurance carrier or employer.[6]

¶ 28 It is important to note that once the Commission establishes original jurisdiction, it obtains continuing jurisdiction over the entire claim, including any later claim relating to the specified industrial injury.

> A claim for compensation . . . is only one claim, no matter how many hearings are had or how many distinct awards are made. It is a claim by the employee for compensation for the injury he has sustained, notwithstanding the compensation may be determined from time to time resulting in many distinct awards.

*Vigos*, 2000 UT 2, ¶ 29 n. 7, 993 P.2d 207 (emphases omitted) (quoting *Aetna*, 274 P. at 143). Therefore, when a claimant initially requests permanent partial or temporary total disability benefits, the Commission establishes original jurisdiction, and if the injury later progresses to permanent total disability, the claimant may request additional benefits under the Commission's continuing jurisdiction over the claim as a whole. *See Johnson v. Indus. Comm'n*, 93 Utah 493, 73 P.2d 1308, 1309 (1937) (holding that a claimant who filed for permanent total disability but was awarded permanent partial disability could apply to reopen his claim and seek additional benefits under the Commission's continuing jurisdiction at the end of his awarded compensation).

¶ 29 Here, the Commission properly exercised its power of continuing jurisdiction under section 35-1-78 to modify Mr. Henningson's award due to its inadequacy. When Mr. Henningson was awarded permanent partial and temporary total disability compensation, he was still in the recovery process after his third back surgery. He could reasonably have assumed at the time the initial award was made that he would at some point return to work, based on his experiences after his previous two back surgeries and information he received from his doctor. When Mr. Henningson did not improve as anticipated and was declared permanently and totally disabled by his physician in 1997, he was eligible to file an application for hearing seeking additional benefits because his award was inadequate. Although it is true that he waited ten years to apply for these benefits, it is also the case that he never received the permanent total disability compensation to which he was entitled. Because the WCA favors full compensation of injured workers, Mr. Henningson, whose permanent total disability has been conceded by both parties, may seek adequate compensation for his injuries.

## III. AMOUNT OF AWARD AND ALLOCATION OF LIABILITY

¶ 30 ERF argues that it would be inequitable for Mr. Henningson to receive permanent total disability benefits dating back to when he was injured in 1993 after he knowingly sat on his rights until 2007. We agree.

¶ 31 The allocation of liability between parties is controlled by statute. Utah Code section 35-1-69 details the benefits that are paid by the primary insurer or employer, and those that are paid by ERF:

> (1) The employer or its insurance carrier is liable for the first $20,000 of medical benefits and the initial three years of permanent total disability compensation as provided in this title.
>
> . . . .

---

**6.** There may be cases where a claimant's lack of good faith or intentional delay in seeking an award would equitably estop him from later seeking a modification of his award. However, the record here does not support an outright denial of Mr. Henningson's requested modification on equitable grounds.

(3) After the initial three-year period under Subsection (1) permanent total disability compensation payable to an employee under this title becomes the liability of and shall be paid by the [ERF].

(4) If it is determined that the employee is permanently and totally disabled, the employer or its insurance carrier shall be given credit for all prior payments of temporary total, temporary partial, and permanent partial disability compensation made as a result of the industrial accident. Any overpayment by the employer or its insurance carrier shall be reimbursed by the [ERF.]

UTAH CODE § 35-1-69 (1993). Thus, the primary insurer or employer is liable for the first three years of permanent total disability benefits from the date the claimant becomes permanently and totally disabled, after which ERF assumes all permanent total disability liability. The primary insurer or employer also receives a credit toward its permanent total disability liability for any temporary or partial benefits it has paid.

¶ 32 The date on which an injured worker begins receiving benefits is also determined by statute: "The period of benefits commences on the date the employee became permanently totally disabled, as determined by the commission based on the facts and evidence[.]" *Id.* § 35-1-67(5)(b)(iv). In some cases, the disability may have been permanent and total for some time but not been recognized as such by the Commission—due, for example, to mistake or lack of knowledge. In such circumstances, benefits may be awarded from a previous date if the claimant can show permanent and total disability. For example, in *Vigos v. Mountainland Builders, Inc.,* the claimant did not realize he was permanently and totally disabled until six years after his accident. 2000 UT 2, ¶ 4, 993 P.2d 207 (plurality opinion). Therefore, if the Commission determined that Vigos became permanently and totally disabled on the date of his accident, his benefits could date back to the date of the injury.

¶ 33 Vigos showed diligence and good faith in repeatedly attempting to return to work, and when he realized the permanent and total nature of his disability, he did not

delay in applying for additional benefits. *Id.* But in cases where a claimant unreasonably delays in applying for permanent total disability benefits once a claim is ripe, equitable considerations may bar the claimant from backdated recovery.

¶ 34 Here, equity bars Mr. Henningson from receiving permanent total disability benefits backdated to December 16, 1994—the date on which the Commission tentatively found Mr. Henningson to have become permanently and totally disabled—because he demonstrated a lack of diligence that resulted in injury to petitioners. Mr. Henningson delayed in filing his claim for permanent total disability benefits for over ten years after he knew or should have known he was permanently and totally disabled. For example, Mr. Henningson filed for social security benefits in 1994 and began receiving full disability benefits in 1995. His doctor reported to WCF in 1997 that he was permanently and totally disabled. Mr. Henningson also never worked or looked for work after the date of his injury. Mr. Henningson offers no reasonable explanation for his long delay in waiting until 2007 to file for permanent total disability benefits.

¶ 35 Petitioners were all injured by Mr. Henningson's unreasonable delay. Because permanent total disability benefits are awarded for life, this delay resulted in substantial injury to ERF in the form of almost ten years of additional and unanticipated liability, allegedly totaling several hundred thousand dollars. The delay prevented ERF from including the expense of Mr. Henningson's disability benefits in its budget during those years, and now presents ERF with liability for almost ten years of backdated benefits, with interest, all at once and without warning. Similarly, this delay prejudiced Sunnyside and WCF in that they were also prevented from planning for this liability in their budgets, and were instead surprised with the additional liability many years later.

¶ 36 Thus, Mr. Henningson's unreasonable delay and lack of diligence, which resulted in prejudice to petitioners, bars him from receiving benefits dating back to when he was found to be permanently and totally disabled

in 1994. Instead, his compensation is limited to prospective benefits from the time he filed his formal application for hearing with the Commission in 2007.

¶ 37 Where a claimant sits on known rights, limiting permanent total disability benefits to prospective compensation from the date of filing makes good policy sense. There are no perverse incentives for a claimant to delay unnecessarily before applying for benefits, since benefits are lost each day the filing of a claim is postponed. Additionally, the purposes of the WCA are not frustrated because the injured worker is still compensated for permanent total disability from the date those benefits are sought. *See Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 260 (Utah 1998). Finally, problems with stale evidence and missing documents or testimony that may arise in attempting to establish the date a claimant became permanently and totally disabled many years after the accident are avoided. *See Vigos*, 2000 UT 2, ¶ 22, 993 P.2d 207.

### CONCLUSION

¶ 38 We hold that the Commission appropriately established jurisdiction by giving notice to all parties. The Commission also correctly exercised its continuing jurisdiction to modify the award because the previous award was inadequate. Due to Mr. Henningson's unreasonably long delay in filing his claim, however, he may receive only prospective benefits from the ERF from the date of filing and is equitably barred from receiving further compensation from Sunnyside and WCF. Therefore, we affirm the Commission's award of permanent total disability benefits and remand to the Commission for proceedings consistent with this opinion in determining the correct amount of Mr. Henningson's prospective award.

Justice DURHAM authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice PARRISH, and Judge VOROS joined.

Having recused himself, Justice LEE does not participate herein; Court of Appeals Judge Voros sat.