**VERMONT INSURANCE
MANAGEMENT, INC. v.
LUMBERMENS' MUTUAL
CASUALTY COMPANY**

[764 A.2d 1213]

No. 99-090

■

November 7, 2000. Plaintiff/insured Vermont Insurance Management Company (VIM) appeals from a grant of summary judgment in favor of defendant/insurer Lumbermens' Mutual Casualty Company (Lumbermens). Plaintiff filed this suit against defendant for insurance coverage and tort damages for insurance bad faith in connection with a lawsuit against plaintiff brought by one of its former employees. The trial court granted summary judgment because it found there was no coverage and, therefore, no bad faith claim either. Plaintiff argues on appeal that (1) defendant

waived its right to deny coverage under the terms of a nonwaiver agreement,* (2) the court erred in finding that because the gravamen of the employee's suit was sexual harassment, no coverage existed under plaintiff's insurance policies, (3) the court erred in finding that the employee's claims were not covered under plaintiff's workers compensation policy, and (4) the court erred in finding that because defendant had no duty to indemnify plaintiff, plaintiff had no viable bad faith claims. We affirm.

In 1990, Betty Wood filed a complaint in the Washington Superior Court, alleging that she and John Middleton were employees of VIM, and that Middleton held a supervisory position. The Wood complaint asserted that Middleton had sexually harassed Wood, that VIM had knowingly tolerated the harassment, and that Middleton's and VIM's conduct amounted to sex discrimination, negligent and/or intentional infliction of emotional distress, civil assault and battery, a constructive and wrongful discharge, and an invasion of privacy.

VIM notified Lumbermens of Wood's claims. At the time, VIM maintained a general insurance policy (business owner's policy) and a workers' compensation and employer's liability insurance policy with Lumbermens. Lumbermens initially denied coverage for the sexual harassment/constructive discharge claim under VIM's business owner's policy. It opened a claim file under the workers' compensation/employer's liability insurance policy, and informed VIM that coverage under that policy was being reviewed. It also informed the parties that if Wood wished to pursue any claims through the workers' compensation system, she needed to

file a claim with the Vermont Department of Labor and Industry. She never did so. Later, Lumbermens agreed to provide VIM a defense of the Wood litigation under the terms of a written nonwaiver agreement, which was signed by VIM. The nonwaiver agreement states: "No action of [Lumbermens] pursuant to this Agreement shall in any way be construed as a waiver or estoppel or as an admission of coverage under the policies." Lumbermens retained attorney Lawrence Miller, who defended the Wood litigation for VIM from 1990 through 1992.

At the end of 1992, settlement negotiations began when Wood announced a settlement demand of $60,000. VIM initially demanded that Lumbermens contribute $45,000 to such a settlement; Lumbermens, stating that there were still "serious coverage questions," offered to contribute $5,000. As settlement negotiations continued, VIM demanded that Lumbermens contribute $25,000. When Lumbermens offered to contribute $20,000, VIM refused, and instead settled the Wood litigation for $45,000 with its own funds. VIM then sued Lumbermens for breach of contract and bad faith for its refusal to indemnify VIM for the settlement.

This Court reviews a motion for summary judgment using the same standard as the trial court. *O'Donnell v. Bank of Vermont*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997). Thus, we will affirm a grant of summary judgment where there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. V.R.C.P. 56(c)(3).

We first address plaintiff's argument that defendant waived any exclusions to coverage by failing to effectively reserve its right to later deny coverage. Defendant agreed to defend the Wood suit under the terms of a written nonwaiver agreement. Plaintiff signed the nonwaiver agreement, which provided that the de-

---

*Although this argument was not addressed by the trial court, it was raised by plaintiff in its motion for summary judgment and on appeal. Thus, we address it here.

fense would be undertaken "without waiver of any right or admission of any obligation under the policies." Plaintiff cites to several Vermont cases which have held that when an insurer with full knowledge of the facts affecting coverage elects not to take advantage of an exclusion, the insurer waives the right to later deny coverage. See, e.g., *Pellon v. Connecticut Gen. Life Ins. Co.*, 105 Vt. 508, 522, 168 A. 701, 707 (1933).

The cases cited by plaintiff are inapposite. We have long recognized that a bilateral reservation of rights agreement prevents a waiver of the right to dispute coverage. *Beatty v. Employers' Liability Assurance Corp.*, 106 Vt. 25, 34, 168 A. 919, 923 (1933); see also *Jefferson Ins. Co. v. Travelers Ins. Co.*, 159 Vt. 46, 50-51, 614 A.2d 385, 388 (1992). The agreement in this case effectively reserved defendant's right to dispute coverage.

Plaintiff's second argument on appeal relates to the business owner's policy. Plaintiff does not dispute the court's finding that Wood's sexual harassment claim was not covered by the business owner's policy, but argues that she advanced in her complaint three other causes of action that were covered under that policy: libel and slander, invasion of privacy, and harassment. Plaintiff argues that if any covered claim were included in Wood's complaint, defendant would be responsible for the entire settlement amount even if most of the claims were uncovered.

Defendant first responds that plaintiff cannot make this claim because it settled without defendant's consent. It relies on policy language that the insurer is *not* responsible unless its obligation to pay has been "finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." We recognize that plaintiff settled without defendant's consent, and the settlement deprived defendant of the ability to determine what portion of Wood's damages are attributable to covered, and uncovered, claims. We also recognize, however, that plaintiff faced a situation of great risk if it went to trial and the judgment was not covered by insurance.

In this case, both defense counsel originally employed by defendant for plaintiff and plaintiff's own counsel advised that Wood's action should be settled. Defendant was aware that plaintiff's counsel was pursuing settlement, and it considered, and rejected, plaintiff's demand that it contribute $25,000 to the settlement, offering $20,000 instead. Under these circumstances, we can not say as a matter of law that defendant can rely on the policy provision. See, e.g., *Gates Formed Fibre Products, Inc. v. Imperial Cas. & Indemnity Co.*, 702 F. Supp. 343, 347-48 (D. Me. 1988).

We do agree with defendant, however, that defendant is liable only for the amount it would have paid in a reasonable, good faith settlement of any covered claims. *Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 679 (9th Cir. 1993) (when insured settles claim without consent of insurer, insurer liable only for amount that would be paid in reasonable, good faith settlement). Further, defendant is liable only for covered claims. See *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1494 (5th Cir. 1992); *McDowell-Wellman Engineering Co. v. Hartford Acc. & Indem. Co.*, 711 F.2d 521, 528 (3d Cir. 1983); *Keller Ind., Inc. v. Employers Mut. Liability Ins. Co.*, 429 So. 2d 779, 780 (Fla. Dist. Ct. App. 1983); *SL Indus. v. American Motorists Ins. Co.*, 591 A.2d 677, 682 (N.J. Super. Ct. App. Div. 1991), *aff'd and modified*, 607 A.2d 1266 (N.J. 1992). Thus, account must be taken of the likelihood of a finding against VIM, as well as the coverage of any ultimate finding of liability.

Defendant has not disputed the reasonableness of the overall settlement amount; instead, it has argued that no part of that settlement is attributed to

covered claims. In effect, the court agreed by concluding that the claims that plaintiff now finds in the Wood's complaint were either not there or would not have withstood a motion to dismiss on the pleadings.

We agree that the covered claims now relied upon by plaintiff cannot be said to have any effect on a reasonable settlement amount because they were asserted only as a component of the sexual harassment claim and would not be an independent ground for liability. The only covered claim mentioned in the complaint was invasion of privacy, but as part of the campaign of sexual harassment. As the court found, plaintiff did not face a legitimate threat from Wood's invasion of privacy claim. Plaintiff seizes on Wood's allegations that Middleton made inquiries of a personal nature and would lean close to her at her work station. However, this is not the type of "substantial intrusion" upon her private affairs which would be "highly offensive to a reasonable person," such that the tort of invasion of privacy has been committed. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 162, 624 A.2d 1122, 1129 (1992) (citing Restatement (Second) of Torts § 652B (1977)); see also *Denton v. Chittenden Bank*, 163 Vt. 62, 69, 655 A.2d 703, 707-08 (1994) (supervisor's actions, including asking personal questions of employee regarding illness and absence from work, at home in front of family and friends, and turning his desk to face employee's and opening doors between their offices did not amount to intrusion that would be highly offensive to reasonable person); Restatement (Second) of Torts § 652B cmt. d (no liability for a few demands for payment of debt; only when "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence" is privacy invaded). We cannot conclude that the possibility that plaintiff committed the independent tort of inva-

sion of privacy would add any amount to a reasonable settlement.

Plaintiff's other claims are even weaker, because plaintiff is attempting to use the factual assertions in the Wood complaint to put together tort claims Wood never asserted. Even if Wood could have asserted these claims, she did not do so, and thus we do not believe they can be valued as part of the settlement. *Caterpillar, Inc. v. Great American Ins. Co.*, 62 F.3d 955, 964 (7th Cir. 1995) (in addressing allocation of settlement amount between covered and uncovered claims, court may not consider theories of liability never at issue in the underlying complaint); *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 38 F. Supp. 2d 771, 776 (D. Minn. 1999) (same); see also *Roman Mosaic & Tile Co. v. Aetna Cas. & Surety Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997).

Plaintiff's third argument on appeal is that Wood's sexual harassment claim was covered by its workers' compensation and employers liability policy. We reject this argument for the same basic reason that we reject the second argument. Wood never pursued a claim for workers' compensation. The fact that defendant's employee believed she might have a claim for such benefits is irrelevant in absence of a claim by her. Workers' compensation liability played no part in the $45,000 settlement.

Finally, plaintiff argues that the court prematurely dismissed its bad faith claim against Lumbermens because the court used the standard applicable to first-party, rather than third-party, bad faith claims. Compare *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995) (standard for first-party bad faith claims), with *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 556-57, 508 A.2d 689, 691 (1986) (standard for third-party bad faith claims). The trial court dismissed the bad faith claim because it had found no coverage for any of Wood's claims.

We do not need to decide whether the court used the wrong standard because the standard is not determinative. Plaintiff raises a plethora of actions it asserts were taken in bad faith, but fails to show how any of these actions damaged it. Third-party bad faith claims arise because of the control an insurer has over the defense of underlying liability claims and the conflict of interest that may develop between insured and insurer over settlement. See *Myers*, 146 Vt. at 555, 508 A.2d at 691. In this case, plaintiff ultimately controlled the defense and settled the underlying action without Lumbermens' consent. There is no allegation that the ultimate settlement amount was unreasonable because of actions of Lumbermens, and we have held that there was no coverage on the claims asserted in the Wood suit. To respond to a recurring theme in plaintiff's arguments, we do not believe we could find bad faith in Lumbermens' failure to inform Wood or plaintiff that there might have been coverage if Wood asserted a workers' compensation claim. While Lumbermens must act "honestly and according to its best judgment," *Johnson v. Hardware Mut. Cas. Co.*, 109 Vt. 481, 491, 1 A.2d 817, 820 (1938), it stretches the carrier's duty beyond recognition to say it must disclose that different claims in the underlying case might maximize coverage.

*Affirmed.*