2015 VT 42

# Curtis Smiley v. State of Vermont

[117 A.3d 441]

No. 13-257

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford,**[1] **JJ.**

Opinion Filed March 6, 2015

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision.

*Christopher McVeigh* of *McVeigh* ◆ *Skiff*, Burlington, for Plaintiff-Appellant.

*William J. Blake* of *Ellis Boxer & Blake PLLC*, Springfield, for Defendant-Appellee.

¶ 1. **Dooley, J.** Claimant appeals two decisions in which the Commissioner of the Department of Labor concluded, as a matter of law, that the State did not waive its statute-of-limitations defense and was entitled to summary judgment based on that defense. We concur that the State did not waive the affirmative defense by agreeing to claimant's request for an impairment rating. We conclude, however, that the commissioner erred by holding that a regulation requiring employers/insurers to determine, at the time an employee with a work-related injury reaches a medical end result, whether the employee has any permanent impairment was not in effect. Nevertheless, we hold that violation of the regulation does not toll the statute of limitations and affirm the commissioner's ruling that the instant claim for permanent partial disability benefits was barred by the applicable statute of limitations.

¶ 2. On January 20, 1996, claimant injured his left ankle during the scope of his employment as a game warden with the State of Vermont. On July 8, 1996, his treating orthopedic physician indicated in medical notes that: (1) it had been six months since claimant had undergone surgery on his ankle; (2) claimant was back at work and able to walk without limitation but still had trouble with stairs; (3) his limitations were characteristic of someone who had fractured his ankle six months earlier; (4) he was offered physical therapy but declined; (5) it generally takes a year to fully recover from such an injury; (6) claimant agreed to return for physical therapy if his situation did not improve within that time frame as expected; and (7) he would be seen again "as needed." Based on that evidence, the commissioner found that "as of July 1996 [claimant] knew, or should have known, that he had reached an end medical result, and that whatever deficits he was left with were likely permanent in nature."[2]

¶ 3. Meanwhile, on May 15, 1996 — approximately four months after claimant's injury and two months before his orthopedic physician wrote the July 8 note — the Department of Labor promulgated Workers' Compensation Rule 18(a), which states, in relevant part, as follows:

---

[2] Neither claimant nor his employer contested this finding by the commissioner, and we accept it as binding upon us.

> The employer (insurer) shall take action necessary to determine whether an employee has any permanent impairment as a result of the work injury at such time as the employee reaches a medical end result. . . . A determination as to whether the claimant has any permanent impairment shall be made within 45 days of filing the notice of termination.

Before the department's promulgation of Rule 18(a), a claimant could investigate a permanent impairment after reaching a medical end result by either directly obtaining an impairment rating from a qualified physician or asking the employer to arrange obtaining the rating; however, there was no express regulatory obligation on the part of the employer — irrespective of any request from the injured employee — to determine whether the employee had a permanent impairment. This was the holding of *Longe v. Boise Cascade Corp.*, 171 Vt. 214, 762 A.2d 1248 (2000), a case in which the claimant applied in 1991 for benefits based on a 1983 injury and argued that because the employer had an obligation to determine whether the claimant had a permanent partial impairment, the statute of limitations was tolled. We held that the workers' compensation statute imposed no obligation on an employer to investigate whether an employee had a permanent impairment or to inform a potential claimant of the right to permanent partial disability benefits. *Id.* at 225-26, 762 A.2d at 1257-58.

¶ 4. Claimant took no further action in this case until the fall of 2010, when he asked his employer's (the State of Vermont's) workers' compensation adjuster to schedule a permanency evaluation for his 1996 injury. In response, the adjuster scheduled an independent medical evaluation with a physician, who concluded that claimant had a one percent permanent impairment rating attributable to the 1996 injury. Claimant arranged for a second evaluation with a physician, who reached the same conclusion.

¶ 5. On May 16, 2011, the State filed a form denying permanent benefits to claimant, asserting that the claim for permanent partial disability benefits was time barred because the six-year statute of limitations had expired.[3] Attached to the form was a letter in which the State's workers' compensation adjuster stated that, although the statute of limitations had run, she offered to pay the

---

[3] The limitations period has since been reduced to three years. 21 V.S.A. § 660(a).

one percent impairment to claimant if he agreed to forego any claim for interest and penalties. In June 2011, claimant filed an application for a hearing on his claim for permanent partial disability benefits related to his 1996 work injury. On September 7, 2011, the State answered claimant's hearing request by pleading the statute of limitations as an affirmative defense.

¶ 6. In November 2011, the State moved for summary judgment, arguing in part that it had not waived its statute-of-limitations defense by scheduling claimant's permanency evaluation. On April 15, 2012, in the first of the decisions being appealed, the commissioner granted the State summary judgment on the waiver issue, while preserving the issue of whether the State had any obligation in this case pursuant to Rule 18(a) to determine whether claimant had a permanent partial impairment. In February 2013, the State filed another motion for summary judgment, arguing that claimant's request for permanent partial benefits was barred by the applicable statute of limitations insofar as Rule 18(a) did not retroactively apply to this case. On June 3, 2013, the commissioner granted the State's motion for summary judgment, concluding as a matter of law that Rule 18(a) did not apply retroactively and claimant knew or should have known that he had reached a medical end result as of July 8, 1996.

¶ 7. Our review is limited to the following questions certified for appeal: (1) whether the commissioner erred by concluding as a matter of law that the State did not waive its right to deny the instant claim on statute-of-limitations grounds by arranging for claimant to undergo a permanency evaluation; (2) whether the claim was barred as a matter of law by the applicable statute of limitations; and (3) whether the commissioner erred by concluding as a matter of law that the State was not barred from asserting the statute of limitations based on a regulatory duty to investigate the extent of claimant's permanent impairment. We will uphold the commissioner's findings unless they are clearly erroneous, but our review of the commissioner's interpretation of law not within her expertise is nondeferential and plenary. See *Sanz v. Douglas Collins Constr.*, 2006 VT 102, ¶ 5, 180 Vt. 619, 910 A.2d 914 (mem.).

¶ 8. On appeal to this Court, claimant argues that the commissioner erred in granting summary judgment to the State, the moving party, by making inferences in favor of the State with respect to the waiver question and when claimant reached a

medical end result. Claimant also argues that the commissioner misinterpreted this Court's legal precedent in determining that Rule 18(a) should not be applied retroactively to his claim in this case. For its part, the State contends that the commissioner's decisions were correct in all respects.

¶ 9. We begin with the waiver question. The commissioner rejected claimant's waiver argument, noting that in past cases the payment of medical bills alone has not been considered a waiver of an employer's right to contest other aspects of an injured worker's claims for benefits, and stating that the evidence, even considered most favorably to claimant, does not demonstrate a clear and unequivocal intent on the part of the State's workers' compensation adjuster to waive a statute-of-limitations defense. On appeal, claimant argues that, in determining the issue of waiver on summary judgment, the commissioner erroneously gave the State, the moving party, rather than him, the nonmoving party, the benefit of all reasonable inferences. According to claimant, a reasonable inference would have been that the adjuster knew or should have been aware of the statute-of-limitations defense for a fourteen-year-old claim.

¶ 10. ▮ The commissioner and the parties have analyzed this issue under the general legal maxim that a waiver is an intentional relinquishment of a known right involving "both knowledge and intent on the part of the waiving party." *LaFrance Architect v. Point Five Dev. S. Burlington, LLC*, 2013 VT 115, ¶ 38, 195 Vt. 543, 91 A.3d 364 (quotation omitted). Viewed as such, a waiver may be express or implied, but before a waiver may be implied, "caution must be exercised both in proof and application," such that "[t]he facts and circumstances relied upon must be unequivocal in character." *Holden & Martin Lumber Co. v. Stuart*, 118 Vt. 286, 289, 108 A.2d 387, 389 (1954).

¶ 11. In this case, claimant is not alleging the existence of an express waiver, but rather asks this Court to find a waiver based solely on the insurance adjuster's agreement, at claimant's request, to schedule a permanent impairment evaluation. He contends that the adjuster should have been aware of a potential statute-of-limitations defense to his long-delayed claim, and that such a defense, if successful, would have acted as a complete bar to his claim, making any permanency evaluation unnecessary. He asserts that, at minimum, the state of the evidence was such that,

giving him as the nonmoving party the benefit of all rational inferences, the court erred by granting the State summary judgment on the question of waiver.

¶ 12. ■ We agree with the commissioner that, as a matter of law, claimant cannot unequivocally demonstrate an implicit waiver under the circumstances of this case. As the commissioner pointed out, even if employers think they may have a viable statute-of-limitations defense, they may want to first discover the extent of the claim before deciding whether to waive or assert the defense. Cf. *Carter v. Cont'l Tel. Co.*, 373 N.W.2d 524, 526 (Iowa Ct. App. 1985) (declining to find waiver of statute-of-limitations defense despite supervisor's statement in prehearing letter that although claim could be barred by statute-of-limitations he preferred not to base his decision on any statutes). Even assuming that the State's workers' compensation adjuster knew of a potential statute-of-limitations defense and believed that it could be successfully asserted in this case, nothing in the record remotely suggests that the adjuster intended to waive that defense by acceding to claimant's request that she arrange a permanency evaluation. Accordingly, we answer the first certified question — whether the commissioner erred in declining to find a waiver based on the adjuster granting claimant's request to schedule a permanent impairment evaluation — in the negative.[4]

¶ 13. Before addressing the second certified question — whether the applicable statute of limitations bars the instant claim for permanent partial disability benefits — we will address the third certified question — whether the commissioner erred in conclud-

---

[4] We note that, in a different context, we have recognized an "insurance-defense-waiver rule" under which "an insurer waives additional defenses that are not raised or reserved in an initial denial of coverage." *Progressive Ins. Co. v. Brown*, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666. There is also a corollary principle that "when an insurer with full knowledge of the facts affecting coverage elects not to take advantage of an exclusion, the insurer waives the right to later deny coverage" unless it signs a nonwaiver agreement with the insured. *Vt. Ins. Mgmt., Inc. v. Lumbermens' Mut. Cas. Co.*, 171 Vt. 601, 603, 764 A.2d 1213, 1215 (2000) (mem.). Here, neither principle is applicable. At the time the adjuster granted claimant's request for a permanency evaluation, the insurer was certainly not denying a claim — none had yet been made — and did not have "full knowledge of all the facts" regarding any potential additional coverage for benefits. Rather, the insurer granted claimant's request for an evaluation to gain a full knowledge of the facts regarding the potential claim. Our holding on the waiver issue in this case should have no impact on the above principles.

ing as a matter of law that the State was not barred from asserting a statute-of-limitations defense based on its failure at the time claimant reached a medical end result to determine whether he had a permanent impairment. We analyze this question in two parts: (1) whether Rule 18(a) should be applied to the instant case; and (2) if so, whether a violation of Rule 18(a) tolls the statute of limitations.

¶ 14. Rule 18(a) requires an employer/insurer at the time an employee with a work-related injury reaches a medical end result to "take action necessary to determine whether [the] employee has a permanent injury" as a result of the injury. The rule further provides that determination of whether an employee has a permanent impairment from a work-related injury must be made within forty-five days of the termination of temporary benefits for the injury based on the employee having reached a medical end result. As noted, claimant was injured in January 1996, and Rule 18(a) was promulgated in May 1996, at least several months before plaintiff reached a medical end result with respect to his work-related ankle injury.

¶ 15. The commissioner cited the general rule that the right to workers' compensation benefits is controlled by the law in place at the time of the work-related injury, and then concluded that Rule 18(a) could not be applied retroactively to this case because it was a substantive rather than procedural rule that fundamentally altered the employer's obligations. In so ruling, the commissioner relied upon our decision in *Sanz*, where we held that an amendment to the workers' compensation law requiring employers to pay benefits in a lump sum upon an injured employee's request could not be applied retroactively because it affected the preexisting rights and obligations of both employees and employers. 2006 VT 102, ¶ 13.

¶ 16. ■ We agree with claimant that the commissioner erred in concluding that Rule 18(a) is substantive in nature and should not be applied in this case. At the outset of our discussion, we note that although this case involves a new rule rather than a statute, our analysis for this purpose is essentially the same as if we were dealing with a statute. Accordingly, in determining the appropriateness of retroactive application, the considerations are the same. See *Chatham Cnty. Dep't of Family & Children Servs. v. Williams*, 471 S.E.2d 316, 317 (Ga. Ct. App. 1996) (stating that

administrative rules and regulations follow same general rule of retroactive application as statutes).

¶ 17. ■ "[I]n general, new statutes do not apply to cases that are pending at the time of the effective date of the new statute," but "there is an exception for statutes that are solely procedural or are remedial in nature." *Myott v. Myott*, 149 Vt. 573, 575, 547 A.2d 1336, 1338 (1988); see 3B N. Singer & J. Singer, Statutes & Statutory Construction § 75:3, at 69-70 (7th ed. 2011) ("A remedial or procedural statute may apply retroactively, unless it interferes with vested or substantive rights."). As a leading commentator on statutory construction explains:

> A remedial statute that does not take away vested rights can operate retroactively in the absence of language manifesting a contrary intent. Likewise, where a new statute deals only with procedure, prima facie it applies to all actions — to those which have accrued or are pending, and to future actions.

2 N. Singer & J. Singer, Statutes and Statutory Construction § 41.4, at 431-32 (7th ed. 2009); see also *Connair v. City of New Haven*, 737 A.2d 971, 973 (Conn. App. Ct. 1999) ("Procedural statutes generally are applied retroactively absent a clear expression of legislative intent to the contrary." (quotation omitted)); *Leutzinger v. Treasurer of Mo. Custodian of Second Injury Fund*, 895 S.W.2d 591, 594 (Mo. Ct. App. 1995) ("Statutory amendments to remedial statutory provisions . . . should be applied retroactively to pending cases.").

¶ 18. ■ The question then becomes whether a retroactive application would affect the substantive rights of the parties. Generally, courts and commentators have stated that provisions are merely procedural in nature if they "control only the method of obtaining redress or enforcement of rights and do not involve the creation of duties, rights, and obligations." *Harris v. DiMattina*, 462 S.E.2d 338, 340 (Va. 1995); see also *State v. Washington*, 830 So. 2d 288, 290 (La. 2002) ("Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws."); 2 N. Singer, *supra*, § 41.4, at 421-23 ("A procedural law concerns the manner and order of conducting suits or the mode of proceeding to enforce legal rights, and a substantive law is one that establishes the rights and duties of a party.").

¶ 19. We conclude that Rule 18(a) should be applied in this case. The rule affects only procedural rights and obligations of the parties in that it dictates the mode or method of proceeding to enforce substantive rights under the remedial law. See *Rauch v. Workers' Comp. Appeal Bd.*, 808 A.2d 291, 294 (Pa. Commw. Ct. 2002) ("A statute is procedural if it provides the method for enforcing a right, but it has no impact on a claimant's legal entitlement under the facts of a particular case."). Claimant had not reached a medical end result prior to the promulgation of Rule 18(a), which imposes procedural duties on employers/insurers at the time injured workers reach a medical end result. See *Jones v. Indus. Comm'r*, 780 N.E.2d 697, 701 (Ill. App. Ct. 2002) (stating that, in determining whether to apply a statute retroactively, court must determine if statute would attach "new legal consequences to events completed before its enactment"). Thus, this is not a case where the new rule interfered with any preexisting rights or obligations. See *Sanz*, 2006 VT 102, ¶ 12 ("When a post-injury amendment does not fundamentally change preexisting rights, it may be applied in a pending action."); see also 2 N. Singer, *supra*, § 41.4, at 417-18 ("The presumption against applying a newly enacted statute retrospectively exists as a matter of fairness, so that people have opportunities to know what the law is and to conform their conduct accordingly.").

¶ 20. The commissioner relied upon *Sanz* in support of her conclusion that Rule 18(a) could not be applied retroactively, but *Sanz* is distinguishable from the instant case. For one thing, *Sanz* dealt with an amendment to a statute, and thus its holding is based on 1 V.S.A. § 214(b), which concerns the effect or repeal of an act or provision of a statute. 2006 VT 102, ¶ 13 ("[W]e hold that 1 V.S.A. § 214(b)(2) prohibits retroactive application of 21 V.S.A. § 652(b) to injuries that predate its enactment."). More significantly, in *Sanz* we refused to apply retroactively a statutory amendment that obligated an employer to grant a claimant's request to provide benefits in a lump sum rather than on a weekly basis over several years because the amended law fundamentally altered both the employer's payment obligations and the claimant's right to benefits. *Id.* In this case, Rule 18(a) did not fundamentally alter the parties' substantive rights or obligations under the statute, but as stated above, merely changed a part of the procedure for obtaining those rights or enforcing those obligations. Cf. *Rauch*, 808 A.2d at 295-96 (distinguishing substan-

tive statutory change allowing lump-sum payment of benefits and holding that statutory amendment allowing diminishment of benefit based on employee's refusal to submit to vocational interview was procedural in nature and could be applied retroactively because it was enforcement mechanism that had no effect on underlying substantive right to benefits). Accordingly, we answer, in part, the third question by holding that employer had a duty under Rule 18(a) to determine whether claimant had a permanent impairment.

¶ 21. This brings us to the second part of the third certified question — whether a violation of Rule 18(a) tolls the statute of limitations. The commissioner did not reach this part because she found that Rule 18(a) was not applicable. In fact, the State argued before the commissioner that the statute of limitations barred the claim even if Rule 18(a) applied. We reach the question of whether claimant is time barred from raising his claim for permanent partial disability benefits fourteen years after he reached a medical end result, despite the applicability of Rule 18(a).

¶ 22. This issue is identical to that decided in *Longe*, except for the presence of Rule 18(a). In *Longe*, the claimant suffered a work-related back injury in 1983 and received temporary partial disability workers' compensation benefits, but after a successful operation returned to work and did not claim permanent partial disability benefits. He suffered another back injury in 1991 and claimed permanent partial disability in 1993, but the employer argued that because the injury was a recurrence of the 1983 injury, benefit eligibility had to be based on the original injury.[5] It further argued that the statute of limitations had run on the 1983 injury so no claim based on that injury could result in the award of workers' compensation benefits. The commissioner awarded benefits for both the 1983 and 1991 injuries, concluding that the limitation period for the 1983 injury claim was tolled because employer had a duty to investigate whether the claimant had suffered a permanent impairment as a result of the 1983 injury and, if so, to inform the claimant of his right to permanent partial disability benefits. In the absence of such investigation and notification, the commissioner ruled that the limitation period was tolled as of the date that duty arose.

---

[5] This question was important because the claimant worked in a paper mill that was owned by one corporation in 1983 and a different corporation in 1991. The two corporations disputed which was liable for claimant's benefits.

¶ 23. This Court reversed the commissioner's decision with respect to the 1983 injury and held that the workers' compensation statute imposed no obligation on an employer to investigate whether an employee had a permanent impairment or to inform a potential claimant of the right to permanent partial disability benefits. 171 Vt. at 226, 762 A.2d at 1258. Specifically, we rejected the notion that the discovery rule, which we have used in some contexts to toll a limitation period until an injury has become reasonably discoverable and apparent, imposes a duty on the employer to determine when an injury accrued and to inform the employee of the potential availability of permanent partial disability benefits. *Id.* at 219-20, 221-22, 762 A.2d at 1253-54, 1255-56. We went on to examine other statutory provisions and found no statutory duty of investigation or notification. *Id.* at 223, 762 A.2d at 1256.

¶ 24. We also went on to examine the law in other jurisdictions, concluding that the majority rule is that "absent a statutory duty, or circumstances sufficient to invoke the doctrines of equitable estoppel or equitable tolling, an employer has no duty to inform an employee of his or her rights under the workers' compensation laws." *Id.* In view of the majority rule, we analyzed the case under the doctrines of equitable estoppel and equitable tolling, concluding that neither applied. *Id.* at 224-25, 762 A.2d at 1257. We did analyze a Department of Labor rule requiring an employer, upon the filing of a claim, to determine whether compensation is due and, if so, to enter into an agreement with the claimant, but we concluded that the employer had satisfied the rule. *Id.* at 225, 762 A.2d at 1257-58.[6]

¶ 25. ▮▮▮ The holding of *Longe* is explicitly stated: "absent a statutory duty or circumstances sufficient to invoke the doctrines of equitable estoppel or equitable tolling, an employer has no duty to inform an employee of his or her rights under the Act." *Id.* at 226, 762 A.2d at 1258. We explained that our ruling is consistent with the principle that persons are presumed to know the law. *Id.*

¶ 26. ▮▮▮ Although we analyze the question in more detail below, we can summarize at the outset that claimant does not

---

[6] Although Rule 18(a) had been adopted by the time of our decision in *Longe*, it was not cited by the parties or addressed in our decision. In *Longe*, unlike this case, the claimant had reached a medical end result long before the commissioner adopted Rule 18(a).

meet the *Longe* standard to avoid the applicable statute of limitations and therefore cannot prevail on his claim. There has been no relevant statutory amendment, and neither equitable estoppel nor equitable tolling apply on the facts of this case. The question then is whether the *Longe* holding should be modified to recognize that breach of a duty imposed by rule, and not by statute, has equal tolling effect. We hold that it does not.

¶ 27. The Commissioner of the Department of Labor has rule-making authority for workers' compensation proceedings. 21 V.S.A. § 602(a); see *Miller v. IBM*, 163 Vt. 396, 398, 659 A.2d 1126, 1127 (1995). Section 602(a) provides that "[a]ll process and procedure under the provisions of this chapter shall be as summary and simple as reasonably may be" and that "[t]he Commissioner may make rules not inconsistent with such provisions for carrying out the same . . . ." Rules are presumed valid, based in part on the acceptance of the construction of a statute by an administrative agency that implements it "absent compelling indication of error." *Miller*, 163 Vt. at 399, 659 A.2d at 1127. The issue here is not whether the rule is valid, but whether noncompliance with Rule 18(a) tolls the applicable statute of limitations.

¶ 28. The applicable limitation period in this case is contained in a very simple and direct statute of limitations: "Proceedings to initiate a claim for benefits pursuant to this chapter may not be commenced after six years from the date of injury." 1993, No. 225 (Adj. Sess.), § 10 (codified as 21 V.S.A. § 660).[7] The limitation period for workers' compensation claims originally was derived from that for contract actions generally, which was six years. See *Fitch v. Parks & Woolson Mach. Co.*, 109 Vt. 92, 98-99, 191 A. 920, 923 (1937). Following *Fitch*, the Legislature placed this limitation

---

[7] The limitation period is now three years, and there have been some minor wording changes in the governing sentence. See 21 V.S.A. § 660(a) ("Proceedings to initiate a claim for a work-related injury pursuant to this chapter may not be commenced after three years from the date of injury."). In addition to reducing the limitations period, a 2004 amendment added the following sentence: "This section shall not be construed to limit subsequent claims for benefits stemming from a timely filed work-related injury claim." With respect to cases where the date of injury occurred before the effective date of the 2004 amendment, we had held that a claim for permanent partial disability benefits was independently subject to the statute of limitations even though claimant had received temporary partial disability benefits. See *Kraby v. Vt. Tel. Co.*, 2004 VT 120, ¶ 6, 177 Vt. 614, 868 A.2d 689 (mem.). Although it is not before us, the 2004 amendment apparently changes this result.

period in the workers' compensation statute. There is nothing in the statute to suggest that the limitation period is suspended because the employer has failed to investigate whether the injury has caused a permanent disability or to notify the employee of a potential claim. Our discussion of statutory construction in *Longe* is directly applicable here.

¶ 29. ▇▇▇ As evidenced by 21 V.S.A. § 660, the Legislature knows how to create an equitable tolling provision when it wishes to do so. However, the Legislature did not impose a duty on employers beyond that set forth in § 691. Nor did the Legislature provide a tolling provision applicable to the six-year statute of limitations for proceedings under the Act. *Longe*, 171 Vt. at 223, 762 A.2d at 1256. The commissioner has no power to create a tolling provision by rule if it is inconsistent with the statute. 21 V.S.A. § 602(a). This is exactly what the commissioner's decision does here.

¶ 30. ▇▇▇ We have held that the equitable doctrines of estoppel or equitable tolling can suspend the operation of the statute of limitations in workers' compensation cases. This is because we have recognized that use of these equitable doctrines is consistent with the general statute of limitations for contract cases. See *Beebe v. Eisemann*, 2012 VT 40, ¶¶ 13-18, 192 Vt. 613, 49 A.3d 160 (mem.) (equitable estoppel); *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶¶ 11-12, 186 Vt. 605, 987 A.2d 258 (mem.) (both); *Lodge at Bolton Valley Condo. Ass'n v. Hamilton*, 2006 VT 41, ¶¶ 9-10, 180 Vt. 497, 905 A.2d 611 (mem.) (both). As we held in *Longe*, equitable estoppel does not apply in a case like this because it requires that claimant show that employer "intended that claimant not file a claim, or that [employer's] inaction was such that claimant had a 'right to believe' that [employer] intended that claimant not file a claim." *Longe*, 171 Vt. at 224, 762 A.2d at 1257 (quoting *Beecher v. Stratton Corp.*, 170 Vt. 137, 140, 743 A.2d 1093, 1096 (1999)). Claimant has not alleged this element in this case, and no finding of the commissioner is consistent with the establishment of this element.

¶ 31. ▇▇▇ *Longe* also analyzed equitable tolling, noting that this doctrine requires either that " '(1) the defendant actively misled the plaintiff or prevented the plaintiff in some extraordinary way from filing a timely lawsuit; or (2) the plaintiff timely raised the precise claim in the wrong forum.' " *Id.* at 224-25, 762 A.2d at

1257 (quoting *Beecher*, 170 Vt. at 143, 743 A.2d at 1098). We found in *Longe* that neither of the alternative elements applied. Neither of the alternative elements apply in this case as the commissioner found.

¶ 32. In essence, the commissioner's decision has expanded equitable estoppel or equitable tolling by reading a critical element out of each so that the employer's inaction alone allows the limitation period to be suspended forever. This use of equitable doctrine eliminates the statutory limitation period in favor of one created by the commissioner. This is beyond the commissioner's power. Therefore, the second certified question — whether the claim was barred as a matter of law by the applicable statute of limitations — is answered in the positive.

¶ 33. There is a second reason why claimant cannot prevail in the face of the statute of limitations. Because the commissioner has applied a version of equitable tolling beyond the limits of the governing statute, her analysis is subject to other equitable doctrines, particularly laches. Many courts have applied laches in workers' compensation cases, particularly where equitable principles are employed to defeat the strict application of a statute of limitations. See *Loffa v. Motor Club of Am. Ins. Co.*, No. L-1820-06, 2008 WL 680357, at *5 (N.J. Super. Ct. App. Div. Mar. 14, 2008) (equitable tolling defeated by laches); *Anaya v. City of Santa Fe*, 451 P.2d 303, 305 (N.M. 1969) (workers' compensation claim barred by laches); *Wieneck v. Drake Bakery*, 960 N.Y.S.2d 240, 241 (App. Div. 2013) (laches applies to workers' compensation proceedings); *Daugherty v. Cherry Hosp.*, 670 S.E.2d 915, 919-20 (N.C. Ct. App. 2009) (workers' compensation claim barred by laches); *Duncan v. Gaffney Mfg. Co.*, 53 S.E.2d 396, 399-400 (S.C. 1949) (tolling defeated by unreasonable delay); *Richey v. Dickinson*, 598 S.E.2d 307, 309-10 (S.C. Ct. App. 2004) (claim defeated by laches); *Correll v. E.L. White & Co.*, 81 S.W.2d 1095, 1097 (Tex. Civ. App. 1935) (claim defeated by laches); *Employers' Reinsurance Fund v. Labor Comm'n*, 2012 UT 76, ¶ 36, 289 P.3d 572 (in case of unreasonable delay in filing claim, equity bars recovery). In order for laches to apply, a party must have " 'fail[ed] to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right.' " *GEICO Ins. Co. v. Bernheim*, 2013 VT 77, ¶ 16, 195 Vt. 73, 86 A.3d 400 (quoting *Stamato v. Quazzo*, 139 Vt. 155, 157, 423 A.2d 1201, 1203

(1980)); see also *In re McCarty*, 2013 VT 47, ¶ 15, 194 Vt. 109, 75 A.3d 589 ("Laches involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay that works disadvantage to another." (quotation omitted)).

¶ 34. ■■ Both elements of laches are met in this case as a matter of law. When claimant reached the medical end result, the treating physician released claimant to return to work believing that over time his condition would return fully to normal. Presumably, an evaluation done on behalf of the employer within forty-five days as required by Rule 18(a) would have reached the same conclusion. Eventually, claimant knew that the doctor's expectation would not be realized. He has held that information for up to fourteen years without any action. There was no way for the State to know there was a lingering disability.

¶ 35. There is another point about the time limit that Rule 18(a) imposes on the employer. The obligation imposed by Rule 18(a) must be discharged within forty-five days after claimant reaches a medical end result. Claimant is presumed to know the law as we emphasized in *Longe*. Thus, claimant is presumed to know fourteen years ago that employer violated the rule. For both the above reasons, claimant's delay in filing his claim is unreasonable.

¶ 36. The result here is a unique kind of prejudice to the employer. This case involves a relatively small recovery because of the small percentage disability involved, but a large amount of interest. Nearly two-thirds of the benefits claimant would recover will be interest.[8] This is because the commissioner's award includes interest at the statutory rate, 21 V.S.A. § 664, and the statutory rate in Vermont is twelve percent, 9 V.S.A. § 41a(a). No financial institution would have paid interest at this rate during the period over which it is accruing in this case. Thus, interest at the statutory rate is a form of penalty imposed on the employer, and if the claimant is not in immediate need for the money, the

---

[8] Calculation of claimant's potential benefits was made using the maximum weekly compensation rate of $655 for the compensation year from June 1, 1995 to June 1, 1996, adjusted annually by 1.011 percent. With the 1% impairment rating multiplied by 405 weeks, claimant potentially could have received over $2700. See Workers' Compensation Rules 11.2200, 16.1000, 3 Code of Vt. Rules 24 010 003-8, 13, available at http://www.lexisnexis.com/hottopics/codeofvtrules. Calculation of the interest accrued on claimant's benefits through 2010 was made using the statutory 12 percent interest rate. Claimant potentially could receive over $4600 in interest alone, for a total of over $7300 in benefits.

financial incentive is to delay a claim as long as possible to realize the high rate of interest. We conclude that this is prejudice as a matter of law.

¶ 37. In summary, we conclude that Rule 18(a) was in effect when claimant reached a medical end result but that claimant's claim is barred by the statute of limitations contained in 21 V.S.A. § 660(a) or, alternatively, laches.

*The first question certified by the commissioner for this appeal is answered in the negative; the second is answered in the positive; and the third is answered in the negative. The commissioner's decisions are affirmed.*

¶ 38. **Robinson, J.,** concurring and dissenting. I note at the outset that this conversation necessarily takes place in something of a time warp. The majority's opinion begins with the premise that a claim for permanent partial disability benefits is subject to its own statute of limitations, even if the claimant has initiated a claim for the underlying work-related injury within the applicable limitations period. As the majority acknowledges, *ante*, ¶ 28 n.7, the Legislature amended the law effective May 26, 2004, and made it clear that, while a claimant's initiation of workers' compensation proceedings is subject to the statute of limitations, specific claims for the various benefits to which an injured worker with a compensable injury is entitled — such as a claim for permanent partial disability benefits — are not each individually subject to a separate statute of limitations. See 21 V.S.A. § 660(a); 2003, No. 132 (Adj. Sess.), § 6 (shortening statute of limitations to three years and providing that section "shall not be construed to limit subsequent claims for benefits stemming from a timely filed work-related injury claim"). If claimant had been injured on May 27, 2004, and had duly filed a report of injury and generic claim for benefits at that time, the statute of limitations would have no bearing on the impact of a comparable delay in seeking permanent partial disability benefits.

¶ 39. I point this out not because the majority's focus on pre-2004 law is inappropriate; it is not. Claimant here was injured in 1996. See *Carter v. Fred's Plumbing & Heating Inc.*, 174 Vt. 572, 574, 816 A.2d 490, 493 (2002) (mem.) (noting, in workers' compensation case, that appropriate statute of limitations is one in effect when cause of action accrued). I emphasize the clear state of our current law on this point because the notion that a

workers' compensation case is open-ended, and that a claimant may not be statutorily barred from pursuing a claim for benefits years after an injury, and even years after the claim for benefits has arisen, is not particularly shocking or unusual. This is one of the most striking features distinguishing workers' compensation from its tort-law cousin.

¶ 40. Even under the pre-2004 regime, when this Court construed the workers' compensation laws to subject claims for permanent partial disability benefits to their own separate statute of limitations, the limitations clock did not begin ticking until the claimant reached a medical end result. *Kraby v. Vt. Tel. Co.*, 2004 VT 120, ¶ 6, 177 Vt. 614, 868 A.2d 689 (mem.). A medical end result (also called an "end medical result" or "maximum medical improvement") is "the point at which a person has reached a substantial plateau in the medical recovery process, such that significant further improvement is not expected, regardless of treatment." Workers' Compensation Vocational Rehabilitation Rule 51.1100, 3 Code of Vt. Rules 24 010 012-1, available at http://www.lexisnexis.com/hottopics/codeofvtrules. This point may not arrive until years after the initial injury. See, e.g., *Laumann v. Dep't of Pub. Safety*, 2004 VT 60, ¶ 2, 177 Vt. 52, 857 A.2d 309 (noting that worker "reached medical end result . . . more than three and a half years from the date of the incident"); *E.H. v. Mack Molding Co.*, No. 14-09WC, 2009 WL 1648082, at *4 (Vt. Dep't of Labor & Industry May 13, 2009) (commissioner accepted opinion testimony of claimant's treating physician that it could take claimant "up to five years to reach end medical result").

¶ 41. I also flag the 2004 amendment in order to emphasize the temporal limits of the majority's critique of the requirement now reflected in Workers' Compensation Rule 18.1100, 3 Code of Vt. Rules 24 010 003-4.[9] That rule provides that once the injured worker reaches a medical end result, the employer or insurer must take action to determine whether the employee has any permanent impairment as a result of the work injury. The majority reasons that in *Longe v. Boise Cascade Corp.*, 171 Vt. 214, 762 A.2d 1248 (2000), this Court found no statutory basis to support the argument that an employer's failure to investigate whether the injured worker has a permanent impairment tolls the

---

[9] The commissioner adopted this rule in 2001. It is the successor to Rule 18(a), discussed in the majority opinion.

statute of limitations associated with that claim. Claimant here is arguing that employer's failure to investigate whether claimant suffered a permanent partial disability (as required by Rule 18.1100) has tolled the applicable statute of limitations — the same argument presented in *Longe*. Because the Legislature has made no changes to the statute with respect to tolling, the majority argues, the Court's decision in *Longe* applies with equal force here, and there is no tolling of the statute of limitations. The commissioner's adoption of a rule suggesting otherwise does not affect the analysis since only the Legislature can change the law as it relates to tolling of the statute of limitations.

¶ 42. Putting aside the merits of this argument as it relates to this pre-2004 injury, the Legislature's elimination of *any* distinct statute of limitations for permanent partial disability claims renders the majority's appraisal of the former Rule 18(a) obsolete as it relates to injuries that arose on or after May 26, 2004. I digress to stress that the majority's opinion is a limited response to a case that arose in the context of a since-abandoned statutory scheme.

¶ 43. Even in the context of the old framework, I find the analysis problematic because it relies on an after-the-fact assumption that the claimant reached a medical end at a specified time, such that the limitations clock started ticking, when there was no contemporaneous medical evidence to support the claim. This is contrary to the clear requirement in workers' compensation law that once a claim is accepted or established, the burden of establishing that the claimant has reached a medical end point falls on the employer.

¶ 44. Bear in mind that "successful return to work" and "end medical result" are distinct concepts, with different ramifications. The former means that the claimant has demonstrated "the physical capacity and actual ability to perform the duties of the job, without disabling pain and/or imminent risk of re-injury." Workers' Compensation Rule 18.1410, 3 Code of Vt. Rules 24 010 003-14. The latter means that the claimant has "reached a substantial plateau in the medical recovery process, such that significant further improvement is not expected, regardless of treatment." Workers' Compensation Vocational Rehabilitation Rule 51.1100, 3 Code of Vt. Rules 24 010 012-1. A claimant who has reached a medical end — with his or her condition having improved as much as it is likely to — may or may not be able to return to work.

¶ 45. Similarly, a successful return to work does not imply that a claimant has reached a medical end point; often a claimant is able to perform the duties of his or her job well before his or her condition improves to its maximum extent. In fact, when a claimant's temporary disability benefits end on account of a return to work, that claimant is entitled to *resume* temporary total disability benefits upon notice to the carrier that his or her return to work has proven unsuccessful, despite reasonable good-faith efforts — *unless* the employer or insurer has filed a Form 27 (Notice of Intention to Discontinue Payments) based on claimant's reaching of an end medical result. Workers' Compensation Rules 18.1200-.1420, 3 Code of Vt. Rules 24 010 003-14 to -15. In this case, even though claimant had successfully returned to work, employer's exposure to continuing temporary total disability benefits, or to temporary partial disability benefits, continued indefinitely because employer never filed a Form 27. Had claimant's return to work failed at some point, employer would have been presumptively back on the hook for temporary total or temporary partial disability benefits unless and until it filed a Form 27 discontinuance. A discontinuance, in turn, must be filed with "adequate, written medical documentation" in order to be effective. *Id.* 18.1200, 3 Code of Vt. Rules 24 010 003-14.

¶ 46. In short, wholly apart from the requirements of Rule 18 concerning the employer's obligation to investigate permanent partial disability, the statutory and regulatory scheme assigned to the employer the burden of demonstrating medical end point. *Wood v. Fletcher Allen Health Care,* 169 Vt. 419, 422-23, 739 A.2d 1201, 1204-05 (1999) (citing *Merrill v. Univ. of Vt.,* 133 Vt. 101, 105, 329 A.2d 635, 637 (1974)); see also *Peabody v. Home Ins. Co.,* No. 69-98WC, 1998 WL 940287, at *4 (Vt. Dep't of Labor & Industry Dec. 23, 1998) ("The burden is on the employer to demonstrate that the claimant has reached a medical end result."). The medical end point was, in turn, the starting point for the six-year limitations period for filing a claim for permanent disability benefits under the old framework.

¶ 47. With that in mind, I consider the summary judgment record here.[10] There is no dispute that the last medical record

---

[10] The majority states that the commissioner "found" that claimant reached a medical end point on July 8, 1996. *Ante,* ¶ 2. Insofar as the commissioner decided this case on summary judgment, without an evidentiary hearing, I treat the

concerning claimant's condition prior to his 2010 impairment rating was from Dr. Thatcher on July 8, 1996. There can be no dispute that Dr. Thatcher did *not* conclude that claimant had reached a medical end result at that time. Instead, Dr. Thatcher noted that he offered claimant physical therapy, but claimant was not interested. He wrote, "If he does not improve over the next several months, which I think he will, then he will get in touch with us for some PT. In general, it takes a year to completely recover from such an injury." Claimant saw Dr. Thatcher approximately six months after his injury.

¶ 48. There can be no doubt, as a matter of law, that if employer had filed a Form 27 discontinuance, asserting that claimant had reached a medical end and attaching this record, it would have been rejected. The doctor's clear statement that he expected claimant to improve over the next several months, and that the typical time to fully recover from such an injury was a year, flies in the face of the suggestion, adopted by the commissioner, that claimant reached a medical end on July 8, 1996. Likewise, if employer had filed a Form 27 six months later, with no new medical evidence, and no affirmation that claimant's condition had improved and then plateaued as expected, it would not have met the requirements of Rule 18.1200.

¶ 49. I have no reason to think that claimant did not reach a medical end result at some point along the way — whether in a month, six months, a year, or more. But we also have no basis for ascertaining when that happened. Instead, here we are a decade and a half later, retroactively reconstructing the record and making what is, at best, an educated guess. And we are doing that despite the fact that throughout the entire period, employer bore the burden of providing evidence to support discontinuing benefits on the ground that claimant had reached a medical end result. Of course, employer had no pressing incentive to do so, because claimant had returned to work. Although the potential for pay-

commissioner's determination on this point as a legal conclusion based on the summary judgment record rather than as a finding of fact. Consistent with this posture, our review of the commissioner's determination of law should be deferential. *Cyr v. McDermott's, Inc.*, 2010 VT 19, ¶ 14, 187 Vt. 392, 996 A.2d 709 ("[W]hile we require the Commissioner's conclusions to reflect the correct interpretation of the law, we will uphold the Commissioner's construction of the workers' compensation statutes absent a compelling indication of error." (alteration and quotation marks omitted)).

ment of additional temporary disability benefits remained, employer here did not have the same incentive to expeditiously secure a determination of medical end result that employers have in cases in which the claimant does not return to work. In fact, its incentives may have pointed the other way: further evaluation could well have exposed employer to further liability for medical care, temporary disability benefits, or permanent disability benefits. But, incentive or not, in the framework of the workers' compensation system, if employer wanted to claim the benefits of claimant's "medical end" status, it had the burden of taking the necessary steps to establish the status.

¶ 50. That brings me to a second major distinction between the workers' compensation process and ordinary personal-injury tort cases. In workers' compensation cases, the employer has a tremendous amount of power to direct the claimant to see providers of the employer's choosing from time to time. Workers' Compensation Rule 13.0000, 3 Code of Vt. Rules 24 010 003-9. Employer not only had the duty to establish when claimant reached a medical end result, if it intended to rely on that determination, but it had the ability to do so easily — in fact, *more* easily than a claimant who is unfamiliar with the exact questions to ask, and the process for securing such opinions.[11]

¶ 51. Under these circumstances, I do not see how employer can invoke the statute of limitations that applied to claimant's permanent partial disability claim. I am not resting my analysis primarily on employer's failure to secure an impairment rating — although as a practical matter the determination of medical end and impairment evaluation are often (though not always) part of the same medical assessment. And I am not arguing that employer's failure in this regard tolled the statute of limitations. I *am*

---

[11] For this reason, I don't accept the majority opinion's narrative that only claimant knew whether his condition had stabilized and that there was no way for employer to know he had a lingering disability. See *ante*, ¶ 34. In workers' compensation cases, claims adjusters closely monitor, and in some cases effectively manage, the course of a claimant's medical treatment. Those adjusters are intimately familiar with the applicable laws and medical concepts, and are quite experienced in setting up evaluations for a determination of medical end point, as well as for impairment ratings. The suggestion that claimant hid the ball here, and that employer bears no responsibility for creating the situation giving rise to this case ignores the reality that employer had both the duty and the power to close the deal and for whatever reason — perhaps neglect, perhaps a strategic calculation — failed to do so.

arguing that the clock never started running in the first place, because the power and the responsibility to establish a condition precedent to the ticking of the clock — claimant's medical end status — fell to employer. Because employer failed to act, the clock never started ticking. No assessment by a medical expert more than a decade later can retroactively change that history.

¶ 52. For that reason, I respectfully dissent. Although I concur in the majority's judgment as to the first certified question, and concur in its conclusion that Workers' Compensation Rule 18(a) applies to injuries sustained prior to the effective date of the rule, I would answer the second certified question in the negative and conclude that the statute of limitations does not bar claimant's claim for permanent partial disability benefits.[12]

---

[12] I would not reach the question of whether the employer's failure to secure an impairment rating for the claimant tolled the statute of limitations because I conclude that the limitations period never began running due to the employer's failure to file a discontinuance documenting claimant's medical end.